# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Area Erectors, Inc. v. Travelers Property Casualty Co. of America*,
**2012 IL App (1st) 111764**

---

| | |
|---|---|
| Appellate Court Caption | AREA ERECTORS, INC., an Illinois Corporation, Plaintiff-Appellant, v. TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut Insurance Company, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-1764 |
| Rule 23 Order filed | October 12, 2012 |
| Rule 23 Order withdrawn | December 4, 2012 |
| Opinion filed | December 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action seeking a declaration that plaintiff was entitled to the replacement cost of its damaged cranes and statutory penalties for its insurer's vexatious refusal to settle the claim, the grant of the insurer's motion for judgment on the pleadings was affirmed, since the insurer was not vexatious or unreasonable and the policy unambiguously provided only for the payment of the cranes' actual cash value, not their replacement costs. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No.10-CH-13192; the Hon. Kathleen M. Pantle, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Jennifer L. Turiello and Kevin J. Caplis, both of Querrey & Harrow, Ltd., of Chicago, for appellant. |
| | Jean M. Golden, and Melissa A. Anderson, both of Cassiday Schade LLP, of Chicago, for appellee. |
| Panel | JUSTICE HOWSE delivered the judgment of the court, with opinion. Justices Palmer and Taylor concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff Area Erectors, Inc., appeals from a circuit court order granting defendant Travelers Property Casualty Company of America's motion for judgment on the pleadings. For the reasons set forth below, we affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3    Plaintiff Area Erectors, Inc. (AEI), filed a complaint for declaratory judgment in the circuit court of Cook County, against defendant Travelers Property Casualty Company of America (Travelers), seeking a declaration that it is entitled to recover the replacement costs of its damaged property and seeking statutory penalties from Travelers for its vexatious refusal to settle its claim. At issue is the measure of the valuation of the property under the policy.

¶ 4    In its complaint for declaratory judgment, AEI alleges that on July 21, 2008, an American 7150 crane it owned was damaged when an unexpected microburst storm came through a construction site and toppled concrete walls onto the crane. Two days later, on July 23, 2008, a Link-Belt crane owned by AEI was damaged in an unrelated incident when the boom hoist cable snapped and fell onto the manlift.

¶ 5    AEI is the insured under a commercial inland marine insurance policy issued by Travelers. AEI filed claims under the policy for the two damaged cranes.

¶ 6    AEI argues it is entitled to recover the replacement cost for the loss of the American 7150 crane. Travelers argues AEI is entitled to recover the actual cash value of the equipment under the policy, a lesser sum than replacement cost.

¶ 7    On September 19, 2008, Travelers determined the 7150 crane to be a total loss. In a letter dated October 2, 2008, Travelers offered $379,868.75 in settlement of AEI's claim on the American 7150 crane. This sum represented what Travelers calculated as the actual cash

-2-

value of the crane less a $25,000 deductible.

¶ 8    Travelers alleged it tendered the proper amount due under the policy, which is the actual cash value of the crane as specified under paragraphs A and B of the " 'Contractors Equipment' Coinsurance and Valuation" endorsement.

¶ 9    AEI claims it is entitled to recover the replacement cost of the damaged American 7150 crane, not actual cash value. AEI argues that the policy is ambiguous as to whether replacement cost or actual cash value applies to a loss of the property. Therefore, the policy should be construed against Travelers and AEI seeks a declaration that Travelers is liable to pay replacement costs.

¶ 10    In count I of AEI's complaint for declaratory judgment, AEI is seeking a declaration that the proper method of valuation for the loss of the American 7150 crane is the replacement value, not the actual cash value.

¶ 11    In count II of AEI's complaint, AEI is seeking a declaration that Travelers acted in a vexatious and unreasonable manner in handling the claim on the American 7150 crane and breached the implied duty of good faith and fair dealing pursuant to sections 154.6 and 155 of the Illinois Insurance Code (215 ILCS 5/154.6, 155 (West 2006)) and section 919.50 of title 50 of the Illinois Administrative Code (50 Ill. Adm. Code 919.50 (2004)). AEI is seeking to recover attorney fees, costs and expenses incurred in seeking coverage from Travelers.

¶ 12    In count III of its complaint for declaratory judgment, AEI is seeking statutory penalties and attorney fees, alleging it should be awarded such penalties because: (1) Travelers failed to acknowledge its liability for the Link-Belt crane claim within a reasonable time period; (2) Travelers failed to respond with reasonable promptness to communications from AEI; and (3) Travelers failed to effectuate a prompt, fair and equitable settlement of the Link-Belt crane.

¶ 13    Travelers filed an answer and affirmative defenses and a motion for judgment on the pleadings. In granting Travelers motion for judgment on the pleadings, the trial court determined that the actual cash value was the proper valuation under the policy.

¶ 14    The trial court found:

"There is no ambiguity in this policy. It is clear from the plain reading of the policy that replacement costs is applicable to items less than five years old from the date of manufacture and actual cash value is applicable to items that are more than five years old from the date of manufacture. As the American 7150 crane was manufactured in 1993, it was over five years old."

¶ 15    The trial court found that penalties under the Illinois Insurance Code are not warranted for Travelers' response to either claim because Travelers did not knowingly violate the Code, a *bona fide* dispute existed between the parties, and the provisions of sections 919.50 and 919.20 of title 50 of the Illinois Administrative Code do not apply to inland marine policies.

¶ 16    AEI filed this timely appeal from the trial court's order granting Travelers' motion for judgment on the pleadings.

¶ 17                                     ANALYSIS

¶ 18      "Judgment on the pleadings is proper where the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law, *i.e.*, similar to a motion for summary judgment but limited to the pleadings." *Parkway Bank & Trust Co. v. Meseljevic*, 406 Ill. App. 3d 435, 442 (2010).

¶ 19      In ruling on a motion for judgment on the pleadings, the court must consider only those facts apparent from the face of the pleadings, judicial admissions in the record and matters subject to judicial notice. *Illinois Tool Works, Inc. v. Commerce & Industry Insurance Co.*, 2011 IL App (1st) 093084. We review the circuit court's grant of judgment on the pleadings *de novo*. *State Farm Fire & Casualty Co. v. Young*, 2012 IL App (1st) 103736, ¶ 11.

¶ 20      "To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citation], with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract [citation]." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). "If the words in the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning." (Emphasis omitted.) *Id.* Words are ambiguous if they are reasonably susceptible to more than one meaning. *Inland Construction Co. v. Home Indemnity Co.*, 113 Ill. App. 3d 558, 559 (1983). Contract interpretation is a question of law, which we review *de novo*. *Illinois Tool Works, Inc. v. Commerce & Industry Insurance Co.*, 2011 IL App (1st) 093084, ¶ 20.

¶ 21      AEI first claims that replacement costs of the American 7150 crane is the appropriate valuation for loss of the crane. We must look to the endorsement titled " 'Contractors Equipment' Coinsurance and Valuation," which is at the center of the dispute between the parties. The relevant portion of the insurance policy at issue reads as follows:

        " 'CONTRACTORS EQUIPMENT' COINSURANCE AND VALUATION This endorsement modifies insurance provided under the IM PAK COVERAGE FORM.

        A. Listed Items

        The Coinsurance Additional Coverage Condition applicable to 'Contractors Equipment' in Section E–ADDITIONAL COVERAGE CONDITIONS is replaced by the following:

        'Contractors Equipment' Coinsurance

        a. Listed Items

        The Limit of Insurance for each item shown on the list on file at our premises must equal at least the percentage of its value shown below at the time of 'loss' or you will incur a penalty:

            (1) Applicable to items less than 5 years old from the date of manufacture: 80% of its replacement cost; and

            (2) Applicable to items over 5 years old from the date of manufacture: 80% of its actual cash value.

        The Penalty is that we will pay only the proportion of any 'loss' to each item that the Limit of Insurance for the item bears to the percentage of its applicable

-4-

value.

(2) Unlisted Items

The Unlisted Limit of Insurance shown in the Declarations must equal at least 80% of the actual cash value of all Unlisted Items at the time of 'loss' or you will incur a penalty.

The Penalty is that we will pay only the proportion of any 'loss' that the Limit of Insurance for Unlisted Items bears 80% of the actual cash value of all Unlisted Items at the time of 'loss'.

The coinsurance penalty does not apply to items leased, rented or borrowed from others unless they are shown as Listed Items.

B. The Valuation Additional Coverage Condition applicable to 'Contractors Equipment' in Section E–ADDITIONAL COVERAGE CONDITIONS is replaced by the following:

'Contractors Equipment' Valuation

In the event of 'loss', the value of your 'Contractors Equipment' as of the time of 'loss' will be determined as shown below:

(1) Items to which Replacement Cost applies at the time of loss or damage will be the least of the following:

(1) The cost to replace the property (without deduction for depreciation) with other property:

(a) of comparable material and quality; and

(b) used for the same purpose.

(2) The cost of reasonably restoring that property to its condition immediately before loss or damage; or

(3) The amount you actually spend that is necessary to repair or replace the property.

We will not pay on a replacement cost basis until the property has actually been repaired or replaced. If the property is not repaired or replaced, we will pay on an actual cash value basis.

(2) Items to which Actual Cash Value applies at the time of loss or damage will be the least of the following:

(1) The actual cash value of that property;

But in the event of partial 'loss', not exceeding 20% of the Limit of Insurance applicable to the Covered Property, no depreciation will be applied in the settlement of the claim;

(2) The cost of reasonably restoring that property to its condition immediately before loss or damage; or

(3) The cost of replacing that property with substantially identical property."

¶ 22    Paragraph A of the endorsement establishes the minimum amount of insurance AEI was required to maintain on its equipment before a coinsurance penalty is incurred. Regardless of the age of the equipment, AEI was required to insure its property for at least 80% of its value to avoid the penalty in the event of a loss. The value of "listed" items less than five years old is the replacement cost. The value of listed items over five years old and unlisted items is the actual cash value. Here it is undisputed that both cranes were more than five years old at the time of the loss.

¶ 23    Paragraph B of the endorsement discusses the valuation of "Contractors Equipment" in the event of a loss. Paragraph B provides two formulas to calculate the value of lost property depending upon which of two valuations applies: "(1) Items to which Replacement Cost applies" and "(2) items to which Actual Cash Value applies." AEI alleges that paragraph B does not provide guidelines for when replacement costs valuation applies or when actual cash value applies and, therefore, the endorsement creates an ambiguity, which we should construe against Travelers.

¶ 24    To ascertain the meaning of the policy's words and the intent of the parties, we must construe the policy as a whole. *Outboard Marine Corp.*, 154 Ill. 2d at 108. We acknowledge subparagraphs 1 and 2 of paragraph B, standing alone, do not provide guidance for the reader for when the replacement cost or actual cash value method applies. Paragraph B presumes the guidelines have already been provided. When we read the entire " 'Contractors Equipment' Coinsurance and Valuation" endorsement, we conclude that guidance has been provided in paragraph A of the endorsement, which immediately precedes paragraph B.

¶ 25    In the event of a loss, paragraph A requires AEI's equipment to be insured for at least 80% of its value to avoid a coinsurance penalty. As we noted earlier, the value of "listed" items less than five years old is the replacement cost and the value for "listed" equipment more than five years old and "unlisted" items is the actual cash value.

¶ 26    There is nothing in the " 'Contractors Equipment' Coinsurance and Valuation" endorsement that would reasonably lead us to conclude that the provisions in paragraph A of the endorsement should be read in a vacuum and not considered when reading paragraph B of the very same endorsement.

¶ 27    If we were to adopt AEI's interpretation of the policy, the result would be the American 7150 crane would be valued at actual cash value for purposes of determining whether AEI carried the minimum amount of insurance to avoid the coinsurance penalty and valuing the same crane at replacement cost to determine the loss. We agree with the trial court that when the policy is read as a whole, including paragraphs A and B of the " 'Contractor's Equipment' Coinsurance and Valuation," the endorsement is not ambiguous and the actual cash value is the proper method of valuation for the damaged American 7150 crane.

¶ 28    AEI next claims the trial court erred when it granted judgement on the pleadings on the allegations of counts II and III that Travelers acted in a vexatious or unreasonable manner in handling AEI's claims under sections 154.6 and 155 of the Insurance Code (215 ILCS 5/154.6, 155 (West 2006)). AEI claims the allegations of the complaint, if taken as true, are sufficient to defeat a motion for judgment on the pleadings.

¶ 29    In ruling on a motion for judgment on the pleadings, the court must consider only those

facts apparent from the face of the pleadings, judicial admissions in the record and matters subject to judicial notice. *Illinois Tool Works, Inc. v. Commerce & Industry Insurance Co.*, 2011 IL App (1st) 093084. In this case, AEI attached exhibits to the complaint that AEI alleged accurately documented the communication that took place between the parties relative to the losses. Since AEI alleged in the complaint that the exhibits constitute an accurate account of the negotiations, they constitute a judicial admission and we will consider the pleadings as well as the exhibits to determine whether judgment on the pleadings was appropriate here. *Bank of Chicago v. Park National Bank*, 277 Ill. App. 3d 167, 172 (1995).

¶ 30    In respect to AEI's claims under section 154.6 of the Insurance Code, we find that section 154.6 does not give rise to a private remedy or cause of action by a policyholder against an insurer but is instead regulatory in nature. *American Service Insurance Co. v. Passarelli*, 323 Ill. App. 3d 587, 590 (2001). Section 154.6 lists acts committed by an insurance company that constitute improper claims practices. *Id.* Under section 154.7, the State Director of Insurance is vested with the authority to charge a company with section 154.6 improper claims practices and serve the company with notice of a hearing date. *Id.* "If a company is found at the hearing to have engaged in improper claims practices, the Director is required to order the company to cease such practices and has the discretion to suspend the company's certificate of authority and/or impose a civil penalty of up to $250,000." *Id.* AEI, therefore, cannot personally seek damages from Travelers under section 154.6. *Id.*

¶ 31    However, a private cause of action does exist under section 155 when "there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable." 215 ILCS 5/155 (West 2006).

¶ 32    "Section 155 was enacted by the legislature to provide a remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits." *Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh,* 398 Ill. App. 3d 710, 722 (2010). " 'The attorney fees, costs, and limited penalty provisions of section 155 are an extracontractual remedy intended to make suits by policyholders economically feasible and punish insurance companies for misconduct.' " *Id.* at 722-23 (quoting *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 681 (2000)).

¶ 33    "A court should consider the totality of the circumstances when deciding whether an insurer's conduct is vexatious and unreasonable, including the insurer's attitude, *** and whether the insured was deprived of the use of his property." *Statewide Insurance Co. v. Houston General Insurance Co.*, 397 Ill. App. 3d 410, 426 (2009). "If a *bona fide* coverage dispute exists, an insurer's delay in settling a claim will not be deemed vexatious or unreasonable for purposes of section 155 sanctions." *Id.*

¶ 34    "The granting of attorney fees and penalties pursuant to section 155 is usually entrusted to the sound discretion of the trial court [citation]." *Id.* at 425. However, when section 155 fees and costs are awarded as a judgment on the pleadings, the standard of review is *de novo*. *Id.*

¶ 35    Based on the record, we cannot say Travelers acted in a vexatious and unreasonable

manner in settling the claim on the American 7150 crane because a *bona fide* coverage dispute exists. According to the record, Travelers offered AEI the actual cash value of the American 7150 crane shortly after it was damaged. AEI responded by disputing whether the actual cash value was the proper method of valuation for the claim, claiming replacement cost is the proper method. This *bona fide* coverage dispute ultimately resulted in the instant action. Therefore, we find the trial court did not err in denying AEI's claims for section 155 penalties on the American 7150 crane claim.

¶ 36　　In respect to the Link-Belt crane, AEI claims in its appellate brief that it is disputing the coinsurance penalty assessed by Travelers. However, in its complaint for declaratory judgment, AEI did not request a declaration that the imposition of the coinsurance penalty was improper. The trial court did not rule on this issue. "A trial court cannot err in failing to decide an issue not presented to it for decision." *Shilli Leasing, Inc. v. Forum Insurance Co.*, 254 Ill. App. 3d 731, 736 (1993). AEI has forfeited the issue on appeal.

¶ 37　　Next, AEI claims it should be awarded section 155 penalties because Travelers failed to affirm or deny liability on the Link-Belt crane within a reasonable time.

¶ 38　　The record shows AEI reported the claim on July 23, 2008. Travelers inspected the crane on August 4, 2008, then sent a repair estimate on August 29, 2008, in the amount of $104,166.37, and advised that it would pay 89% of that estimate ($92,708.07) due to a coinsurance provision in the insurance policy.

¶ 39　　AEI obtained alternate repair information and submitted its findings to Travelers on January 12, 2009. Travelers issued a check to AEI on January 20, 2009, in the amount of $92,708.07. AEI responded on February 26, 2009, claiming the check was insufficient because the repair cost was $235,422.62. Travelers responded by email the same day indicating it would revise its offer based on the information provided by AEI. Travelers revised its offer from $92,708.07 to $202,597.30. To arrive at this amount, Travelers deducted $7,785.20 as depreciation from the AEI repair estimate of $235,422.62, then assessed an 11% coinsurance penalty, thereby, reducing the net amount to 89% of the costs.

¶ 40　　Travelers paid an additional portion of the claim on the Link-Belt crane on May 22, 2008, in the amount of $142,890.23. Travelers made supplemental payments on the claim on October 26, 2010, and January 14, 2010.

¶ 41　　Thus, in approximately five weeks from the date the crane was damaged, Travelers informed AEI of its repair estimate and the amount it would pay under the policy. We cannot say this action by Travelers was vexatious or unreasonable.

¶ 42　　The record shows that Travelers responded in a reasonable time to AEI's initial claim on the Link-Belt claim. It also responded accordingly when AEI disputed the amounts Travelers offered in settlement of the claim and provided documentation that the repairs were more costly than Travelers estimated. They ultimately settled the claim after receiving the additional information. Based on the record before us, we cannot say Travelers refused to recognize liability or acted in a vexatious and unreasonable manner. The record shows a *bona fide* coverage dispute existed; therefore, section 155 penalties are not warranted for Travelers' handling of the Link-Belt crane.

¶ 43                              CONCLUSION

¶ 44          For the foregoing reasons, we affirm the judgment of the trial court.

¶ 45          Affirmed.