MICHAEL CAREY *et al.*, Plaintiffs-Appellees, v. AMERICAN FAMILY BROKERAGE, INC., a Foreign Corporation, d/b/a American Family Insurance Group, Defendant-Appellant.

First District (1st Division)    No. 1—07—3261

Opinion filed May 11, 2009.

Mark D. Roth, of Orum & Roth, LLC, of Chicago, for appellant.

William J. Harte and Brett G. Tatara, both of William J. Harte, Ltd., of Chicago, for appellees.

PRESIDING JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiffs Michael Carey and James Fann brought this action in the circuit court of Cook County seeking to recover proceeds under a "Businessowners Package [Insurance] Policy" (the policy) issued by defendant American Family Brokerage, Inc., d/b/a American Family Insurance Group, after a mixed-use building located at 4255 South Richmond Street in Chicago (subject building) owned by plaintiffs and insured by defendant was substantially damaged by a fire on February 6, 2001. The subject building consisted of eight residential rental apartment units and a dentist's office. Defendant denied coverage claiming that the fire was caused by arson that plaintiffs participated in, which was excluded under the policy. Following a bench trial, the trial court found in favor of plaintiffs, specifically finding that defendant failed to prove its affirmative defense of arson, and awarded plaintiffs a total of $427,220.17, allocated as follows: $383,725.61 for damage to the subject building, $33,705 for loss of rental income, and $9,789.56 for loss of business personal property. The only issue raised in this appeal concerns the propriety of the damage award.

## BACKGROUND

As the only issue raised in this appeal concerns the propriety of the damage award, we recite only those facts necessary for our consideration of that singular issue.

The subject building was purchased by plaintiffs in 1998 for approximately $225,000. After its purchase, plaintiffs made approximately $60,000 in improvements to the subject building. Carey, one of the subject building's owners and a plaintiff in the case at bar, testified that the improvements included the installation of new water heaters for each of the eight residential apartment units and replacement of the "piping in the building, allowing [each unit] to control [its] own hot water and [its] own heat." In November 2000, plaintiffs paid for approximately $25,000 worth of repairs to three residential apartment units damaged by flooding.

## 1. The Insurance Policy

Defendant issued to plaintiffs three consecutive one-year policies covering the September 1, 1998, through September 1, 2001, time period. The policy at issue in this case, policy No. 12—XA3340, covered the September 1, 2000, through September 1, 2001, time period and provided coverage of $850,000 for damage to the subject building and business personal property. With regard to the valuation relating to damage to covered property, the policy provided:

"VALUATION OF COVERED PROPERTY

Loss or damage to covered property (except money or securities) will be determined on either replacement cost or actual cash value, as shown in the declarations and defined below.

\* \* \*

1. Replacement Cost. When Replacement Cost is the basis for valuation:

a. We will pay no more than the smaller of:

(1) the cost to repair or replace the damaged property at the same site, and for similar use, using new materials of like kind and quality without deduction for depreciation; or

(2) the amount actually and necessarily spent to repair or replace the damaged property.

\* \* \*

c. We will not pay on a replacement cost basis until the damaged or destroyed property is repaired or replaced, and unless such repair or replacement is made as soon as reasonably possible after the loss.

(1) You may make a claim for actual cash value and later make a claim on a replacement cost basis, if you tell us in writing within 180 days after the loss.

(2) If you decide not to repair or replace the property at the same site, we will pay your loss on an actual cash value basis.

2. Actual Cash Value. When Actual Cash Value is the basis for valuation:

a. We will pay the smaller of:

(1) the actual cash value at the time of the loss; or

(2) the cost to repair or replace the damaged property with property of like kind and quality."

The policy declarations specifically provide that the loss to the subject building is to be measured on an actual cash value basis.

## 2. The Fire

On February 6, 2001, a fire caused substantial damage to the subject building. In February 2001, plaintiffs filed a claim under the policy. However, as noted, defendant denied plaintiffs' claim based on its investigation that the fire resulted from arson, and that plaintiffs participated in the arson, which was excluded under the policy. The applicable exclusion reads as follows:

"EXCLUSIONS

We do not insure against loss caused directly or indirectly by any of the following:

\* \* \*

1. **Acts of Persons or Governments.** We will not pay for loss:
    a. arising out of any act committed:
        (1) by or at the direction of any insured; and
        (2) with the intent to cause a loss."

In February 2001, defendant engaged the services of Judy Spoerlein, a fire loss specialist from Walrab, Capanegro & Associates, as an independent fire appraiser to prepare an estimate of the damages caused to the subject building by the February 6, 2001, fire. Spoerlein investigated every room of the subject building that had been damaged by fire and utilized an "estimating program" to arrive at a damage valuation. At trial, Spoerlein testified that the "estimating program" was a software program which included the replacement cost for damaged "units," *i.e.*, windows, doors, etc. Spoerlein testified that after she measured the dimensions of every damaged room and noted all damaged "units," she input her figures into the "estimating program" and arrived at a replacement cost estimate for damage to the subject building at $398,725.61.

## 3. Trial

After defendant denied coverage, plaintiffs filed the instant lawsuit against defendant for breach of the insurance contract. Plaintiffs presented Spoerlein as a damage witness at trial.[1] On direct examination, Spoerlein testified that she prepared an estimate regarding damage caused to the subject building utilizing the aforementioned "estimating program." On cross-examination, Spoerlein testified that she utilized a replacement cost valuation method in calculating her estimate and did not utilize the actual cash value method. She testi-

---

[1] At trial, the parties agreed to waive the foundational requirements for the admission of certain evidence, including the admission of Spoerlein's testimony and her report containing her estimate regarding damage to the subject building prepared in February 2001. Spoerlein's testimony and February 2001 report were received into evidence without objection.

fied that to arrive at an actual cash value estimate she would first determine a replacement cost estimate and then subtract depreciation. Spoerlein testified that her February 2001 report and the values contained in her report did not consider the depreciation of the items that were damaged by the February 6, 2001, fire. Spoerlein further testified that the actual cash value of the damage to the subject building would represent a lower figure than the replacement cost for the same damage, because a deduction for depreciation would be made from replacement cost to arrive at an actual cash value estimate.

During its closing argument, defendant argued that plaintiffs failed to sustain their burden of proving damages to the subject building by a preponderance of the evidence under the policy because the only evidence submitted concerning damage to the subject building was Spoerlien's testimony of replacement cost rather than the actual cash valuation called for by the policy. After hearing all arguments from the parties, the trial court awarded plaintiffs $383,725.61, after subtracting $1,000 for plaintiffs' deductible under the policy and a $14,000 advance paid by defendant (used to perform emergency structural repairs to the subject building shortly after the fire) from Spoerlein's valuation for damage caused to the subject building by the February 6, 2001, fire. The trial court denied defendant's posttrial motion and this appeal followed.

## ANALYSIS

On appeal, defendant claims that the trial court erred when it awarded plaintiffs $383,725.61 for damage caused to the subject building by the February 6, 2001, fire by utilizing Spoerlein's damage estimate, which was arrived at by using replacement cost rather than the actual cash value valuation called for by the policy. Defendant further claims that plaintiffs failed to prove damages under the correct measure of damages and argues that this court should vacate the trial court's judgment in favor of plaintiffs on the issue of damages to the subject building.

When a challenge is made to a trial court's ruling following a bench trial, the proper standard of review is whether the trial court's judgment is against the manifest weight of the evidence. *Fox v. Heimann*, 375 Ill. App. 3d 35, 46 (2007). To reverse a finding of damages, a reviewing court must find that the trial judge ignored the evidence or that the measure of damages was erroneous as a matter of law. *B&Y Heavy Movers, Inc. v. Fluor Constructors, Inc.*, 211 Ill. App. 3d 975, 984 (1991). A plaintiff must prove damages to a reasonable degree of certainty, and evidence of damages cannot be remote, speculative, or uncertain. *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App.

3d 365, 383-84 (2004), citing *In re Estate of Halas*, 209 Ill. App. 3d 333, 349 (1991); *First National Bank of Elgin v. Dusold*, 180 Ill. App. 3d 714, 718 (1989).

Plaintiffs argue that they proved damages to a reasonable degree of certainty and that Spoerlein's testimony and report coupled with other evidence of the subject building's value (specifically, the subject building's purchase price in 1998, the cost of improvements to the subject building, and the policy limits for damage to the subject building), were a sufficient basis for the trial court's award for damage to the subject building. Citing *Moniuszko v. Moniuszko*, 238 Ill. App. 3d 523, 531 (1992), and *In re Estate of Chaitlen*, 179 Ill. App. 3d 287, 292 (1989), plaintiffs claim that a damage award need merely have an adequate basis in the record and that absolute certainty as to the amount of damages is unnecessary. Further, plaintiffs argue that defendant waived any error relating to the propriety of the damage award when it waived the requirement of foundation for the admission of Spoerlein's testimony and February 2001 report into evidence.

Having reviewed the record in this case, including the policy, the transcript of Spoerlein's trial testimony and her February 2001 report relating to the damage to the subject building, we find that the trial court's award for damage to the subject building was against the manifest weight of the evidence.

As noted, plaintiffs filed the instant lawsuit after defendant denied coverage claiming that the fire was caused by arson that plaintiffs participated in, which was excluded by the policy.[2] Because the action is one for breach of contract to pay under the policy, the amount recoverable by the insured is the amount that would have been paid had the insurer honored its obligation. *Paluszek v. Safeco Insurance Co. of America*, 164 Ill. App. 3d 511, 516-17 (1987).

We turn to the policy to determine the amount recoverable by plaintiffs had defendant not denied coverage.

The principles involved in the interpretation and construction of insurance contracts are the same as those involved in construing other contracts. *Seeburg Corp. of Delaware v. United Founders Life Insurance Co. of Illinois*, 82 Ill. App. 3d 1034, 1039 (1980). Thus, the primary objective in the construction of an insurance policy is to determine and give effect to the intent of the parties, as expressed by

---

[2]As noted, the trial court found that defendant failed to prove that plaintiffs participated in the arson of the subject building. As noted, the only issue before this court is the propriety of the damage award relating to damage to the subject building. We are not asked to review the trial court's finding with regard to arson.

the agreement. *Rohe v. CNA Insurance Co.*, 312 Ill. App. 3d 123, 127 (2000). "To do so, a court must 'construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract.' " *Rohe*, 312 Ill. App. 3d at 126-27, quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). "If the words in the policy are clear and unambiguous, there is no need for construction and the court will enforce the policy according to its terms as written, unless it contravenes public policy." *Rohe*, 312 Ill. App. 3d at 127, citing *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 423-24 (1980), and *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 4-5 (1981). "However, a policy term is not ambiguous because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning." *Rohe*, 312 Ill. App. 3d at 127, citing *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 529 (1995). Additionally, "a court cannot read an ambiguity into a policy just to find in favor of the insured." *Rohe*, 312 Ill. App. 3d at 127, citing *Lapham-Hickey*, 166 Ill. 2d at 530. "Rather, a policy provision is ambiguous only if it is subject to more than one reasonable interpretation." *Rohe*, 312 Ill. App. 3d at 127, citing *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991). "Where competing reasonable interpretations of a policy exist, the court must construe the policy in favor of the insured and against the insurer that drafted the policy." *Rohe*, 312 Ill. App. 3d at 127, citing *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997).

As noted, the policy declarations in the instant case specifically provide that the loss to the subject building is to be calculated on an actual cash value basis. With regard to actual cash value, the policy provides:

"2. Actual Cash Value. When Actual Cash Value is the basis for valuation:
a. We will pay the smaller of:
(1) the actual cash value at the time of the loss; or
(2) the cost to repair or replace the damaged property with property of like kind and quality."

With regard to replacement cost, the policy provides:

"c. We will not pay on a replacement cost basis until the damaged or destroyed property is repaired or replaced, and unless such repair or replacement is made as soon as reasonably possible after the loss.

(1) You may make a claim for actual cash value and later make a claim on a replacement cost basis, if you tell us in writing within 180 days after the loss.

(2) If you decide not to repair or replace the property at the same site, we will pay your loss on an actual cash value basis."

The policy unambiguously requires that the damage to the subject building be calculated on an actual cash value basis. The policy provides that when actual cash value is the basis for the calculation, defendant is obligated to pay the lesser of the "actual cash value at the time of the loss," or "the cost to repair or replace the damaged property with property of like kind and quality." The policy further provides that defendant is not obligated to pay on a "replacement cost basis until the damaged or destroyed property is repaired or replaced, and unless such repair or replacement is made as soon as reasonably possible after the loss." Even if replacement cost was a proper measure of damages in the case at bar, no evidence in the record indicates that the subject building was actually repaired or replaced other than $14,000 of emergency structural repairs having been made to the subject building after the February 6, 2001, fire. For this additional reason, replacement cost was not the proper measure of damages in the case at bar. Accordingly, we find that the proper measure of damages under the policy in the instant case was "the actual cash value at the time of the loss."

At trial, Spoerlein testified that she was hired by defendant in February 2001 to prepare an estimate for the damage caused to the subject building by the February 6, 2001, fire. She testified that she investigated every room of the subject building that had been damaged by fire and utilized an "estimating program" to arrive at a damage valuation. Spoerlein testified that after she measured the dimensions of every damaged room and noted all damaged "units," she input her figures into the "estimating program" and arrived at a replacement cost estimate to the subject building at $398,725.61. On cross-examination, Spoerlein testified that she only utilized a replacement cost valuation method in arriving to her estimate and did not utilize an actual cash value method. She testified that to arrive at an actual cash value estimate she would first determine the replacement cost then subtract depreciation. Spoerlien testified that her February 2001 report and the values contained in her report did not consider the depreciation of the items that were damaged by the February 6, 2001, fire. Spoerlein further testified that the actual cash value of the damage to the subject building would represent a lower figure than the replacement cost, because a deduction for depreciation would be deducted to arrive at an actual cash value estimate.

Spoerlein's testimony regarding the proper method for arriving at actual cash value comports with well established Illinois law. "[I]n arriving at 'actual cash value' a deduction must be made from replacement cost to account for depreciation \*\*\*." *General Casualty Co. v. Tracer Industries, Inc.*, 285 Ill. App. 3d 418, 422 (1996), citing *C.L. Maddox, Inc. v. Royal Insurance Co. of America*, 208 Ill. App. 3d 1042, 1055 (1991); *Chicago Title & Trust Co. v. United States Fidelity & Guaranty Co.*, 511 F.2d 241, 244-45 (7th Cir. 1975), citing *Smith v. Allemannia Fire Insurance Co. of Pittsburg*, 219 Ill. App. 506, 513 (1920) ("[insured] under his policies is entitled to be indemnified hence actual cash value means reproduction value less depreciation"). Depreciation in an insurance context, which is different than depreciation in an accounting context, means the decrease in the actual value of property based on its physical condition, age, use, and other factors that affect the remaining usefulness of the property. Black's Law Dictionary 473 (8th ed. 2004).

As noted, plaintiffs argue that the evidence in this case, specifically, Spoerlein's testimony and report, coupled with other evidence of value (the building's purchase price in 1998, the cost of improvements to the subject building, and the policy limits for damage to the subject building), was a sufficient basis for the trial court's award for damages to the subject building based on an actual cash value basis. Some courts have applied what are called the "market value" or "broad evidence" test in determining the actual cash value of damaged property. Plaintiffs appear to advocate either the "market value" or "broad evidence" test, although we are unsure which. Under the "market value" test, the sole consideration is what a willing buyer would give and what a willing seller would take for the property on a cash sale in a free and open market. See, *e.g.*, *Erin Rancho Motels, Inc. v. United States Fidelity & Guaranty Co.*, 218 Neb. 9, 352 N.W.2d 561 (1984). Under the "broad evidence" test, consideration is given to every fact and circumstance logically tending to establish the true economic value of damaged property, such as its original cost; its obsolescence, both structural and functional; depreciation and deterioration to which it has been subjected; and the opinion of value given by qualified expert valuation witnesses. See, *e.g.*, *Barrett v. Prudential Property & Casualty Insurance Co.*, 790 F.2d 842 (11th Cir. 1986).

Illinois courts have rejected both the "market value" and the "broad evidence" tests, instead applying the aforementioned "replacement cost less depreciation" test in determining the actual cash value of damaged property. See *Smith v. Allemannia Fire Insurance Co.*, 219 Ill. App. 506 (1920); *C.L. Maddox, Inc. v. Royal Insurance Co. of*

*America*, 208 Ill. App. 3d 1042 (1991); *General Casualty Co. v. Tracer Industries, Inc.*, 285 Ill. App. 3d 418 (1996); *Knuppel v. American Insurance Co.*, 269 F.2d 163 (7th Cir. 1959). Accordingly, the proper calculation of actual cash value under both Illinois law and the policy in the case at bar is "replacement cost less depreciation."

There is no evidence in the record before us regarding depreciation of the subject building. Spoerlein testified that she did not consider depreciation in arriving at her estimate. Spoerlein arrived only to a replacement cost estimate, which could only operate as a starting point to arrive at an actual cash value of the damage to the subject building once a deduction for depreciation was made. Accordingly, plaintiffs failed to prove the actual damages in the case at bar, and the trial court's award was against the manifest weight of the evidence.

Despite the foregoing, plaintiffs argue that any error made by the trial court in calculating damages for damage to the subject building was invited by defendant. See *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004) ("[s]imply stated, a party cannot complain of error which that party induced the court to make or to which [the] party consented"). Plaintiffs argue that defendant invited the trial court's error by waiving the foundational requirements for the admission of evidence, including the admission of Spoerlein's testimony and her report containing her estimate regarding damage to the subject building prepared in February 2001; accordingly, plaintiffs argue, defendant accepted the sufficiency of Spoerlein's estimate. Alternatively, plaintiffs argue that defendant invited the error by not introducing evidence of depreciation itself. We find plaintiffs' arguments unpersuasive.

Plaintiffs' argument regarding defendant's waiver by accepting Spoerlein's testimony and report as sufficient evidence of actual cash value is belied by the record. It is true that defendant agreed to waive all foundational requirements regarding the admission of Spoerlein's testimony and report. However, defendant specifically reserved objection to the testimony and report on all other bases. Further, defendant subjected Spoerlein to cross-examination regarding her estimate and in particular the lack of a calculation considering depreciation. During closing argument, defendant specifically argued that plaintiffs failed to sustain their burden of proving damages to the subject building under the policy because the only evidence submitted concerning damage to the subject building was Spoerlein's testimony of replacement cost rather than actual cash value called for by the policy.

Plaintiffs' argument regarding defendant's failure to produce evidence of depreciation is similarly unpersuasive. As noted, it is a plaintiff's burden to prove damages to a reasonable degree of certainty.

*Gleason*, 352 Ill. App. 3d at 383-84. Defendant had no burden of proof and was not required to prove plaintiffs' case.

Although plaintiffs failed to provide an adequate basis upon which the trial court could calculate damages with reasonable certainty, the record is of course sufficient to establish that plaintiffs suffered damages as a result of the February 6, 2001, fire. Accordingly, it would be unjust to reverse the award for damage to the subject building outright, and we, therefore, reverse and remand for a new trial solely on the question of the actual cash value of the damage to the subject building, where depreciation must be determined and subtracted from replacement cost. See *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 110 (2006).

## CONCLUSION

Based upon the foregoing, we affirm in part, reverse in part, and remand for a new trial solely on the issue of damages for damage to the subject building.

Affirmed in part and reversed in part; cause remanded with instructions.

HALL and GARCIA, JJ., concur.