# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Clayton v. Planet Travel Holdings, Inc.*, 2013 IL App (4th) 120717

---

| | |
|---|---|
| Appellate Court Caption | GARY CLAYTON and MARSHA CLAYTON, Plaintiffs-Appellees, v. PLANET TRAVEL HOLDINGS, INC.; PLANET TRAVEL GROUP, INC.; PLANET TRAVEL GROUP, a Partnership; PLANET TRAVEL GROUP, a Sole Proprietorship; and DONALD C. FUENER, Individually and as Sole Proprietor, Defendants-Appellants. |
| District & No. | Fourth District<br>Docket No. 4-12-0717 |
| Filed | May 9, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to recover the payment plaintiffs made to defendant travel agency for a vacation trip that was never consummated due to the agency's failure to pay for the final arrangements, the trial court properly entered judgment for plaintiffs in the amount plaintiffs paid the agency and attorney fees, plus costs, and, furthermore, the sole proprietor of the agency was properly held liable for the judgment, since the fee award was justified under the Consumer Fraud Act counts based on his fraudulent conduct and was not disproportionate to the recovery, and the sole proprietor's corporate maneuvers did not shield him from liability. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 08-LM-1876; the Hon. Chris Perrin, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Costello (argued), of Costello Law Office, of Springfield, for appellants.

Lisa Petrilli (argued), of Sorling Northrup, of Springfield, for appellees.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1     In September 2011, the trial court awarded judgment in favor of plaintiffs and against defendants in the amount of $5,994.32 following a trial. In July 2012, the court entered judgment for attorney fees in favor of plaintiffs and against defendants in the amount of $32,306.25 and costs in the amount of $680.67.

¶ 2     Defendants appeal, arguing the trial court (1) abused its discretion in awarding attorney fees to plaintiffs; (2) erred in awarding attorney fees against defendant Donald Fuener individually; and (3) erred in refusing disclosure of the fee agreement between plaintiffs and their counsel. We affirm.

¶ 3                   I. BACKGROUND

¶ 4     The following is gleaned from various pleadings and exhibits found in the common law record. No transcript of the trial was included in the record on appeal. The only transcript provided to this court concerns the attorney fee hearing on May 2, 2012.

¶ 5     Prior to August 3, 2007, plaintiffs, Gary and Marsha Clayton, spoke with defendant Planet Travel Group, Inc. (Planet Travel Group), an Illinois corporation, to make travel arrangements for a group of 11 people to Cancun, Mexico. On August 3, 2007, Planet Travel Group booked a Cancun vacation package for plaintiffs through Apple Vacations (Apple) for a total cost of $12,738.64. On that date, plaintiffs paid a $1,375 deposit to Planet Travel Group and received a $125 credit discount. The remaining balance of $11,238.64 was due on November 18, 2007. Following a phone call from Fuener stating he needed the balance to be paid that day, plaintiffs paid the remaining balance to Planet Travel Group with $5,619.32 being paid with plaintiffs' VISA charge card on November 6, 2007, and $5,619.32 being paid by personal check dated November 7, 2007.

¶ 6     On December 12, 2007, Apple contacted Marsha and informed her it had only received $1,000 from Planet Travel Group for their trip. Marsha contacted Planet Travel Group to advise Fuener, also a defendant and the president, agent, and majority shareholder of Planet Travel Group, of her conversation with Apple, at which time he told her Apple had been paid

in full. Marsha requested proof of payment and Fuener sent a fax enclosing copies of four checks totaling $10,408.64 he claimed Planet Travel Group submitted to Apple on November 27, 2007. These checks were neither signed by an authorized agent of Planet Travel Group nor had they cleared the bank. According to defendants, after they became aware Apple had not received payment, they attempted to resend the money, but were unable to do so because Apple refused to work with them. On December 13, 2007, defendants booked a comparable vacation for plaintiffs through GoGo Worldwide Vacations (GoGo). However, at trial, defendants admitted full payment for plaintiffs' trip was never made to either Apple or GoGo.

¶ 7        On December 17, 2007, Gary wrote to Fuener at Planet Travel Group indicating this was the date defendants were to give plaintiffs confirmation of their bookings and proof of payment for their vacation. Gary advised Fuener if confirmation was not received by 4 p.m., plaintiffs expected the full amount they paid to be refunded by the end of the business day. Fuener faxed Gary a response informing him he was still waiting on confirmation from GoGo but should know something soon. Plaintiffs never received confirmation so they notified defendants in writing they were terminating their travel plans with Planet Travel Group and requested a refund in the amount of $11,238.64. Also on December 17, 2007, Gary contacted his credit card company, Chase, to dispute the $5,619.32 transaction made to Planet Travel Group on November 6, 2007. On December 18, 2007, Planet Travel Group informed Apple (1) it was no longer handling the transaction regarding plaintiffs' trip and (2) it would refund the monies it had received to plaintiffs. Plaintiffs then booked their trip directly through Apple.

¶ 8        On December 20, 2007, Gary wrote to Fuener and enclosed a copy of the $1,000 refund check Apple had mailed to Planet Travel Group that day. Gary requested the $1,000 deposit be added to the balance defendants owed plaintiffs, bringing the total owed to $12,238.64. On January 7, 2008, Planet Travel Group mailed a letter to Gary informing him it was processing his refund as quickly as possible. Planet Travel Group also enclosed the $1,000 check from Apple, explained it had processed Gary's credit card refund, and notified him it was still waiting on checks from GoGo which it intended to pass on to him as well. Planet Travel Group initially failed to endorse the check from Apple, although it eventually did so. On January 14, 2008, GoGo sent a letter to plaintiffs informing them it did not currently have any pending bookings for them nor had it ever received any money deposited on a booking for plaintiffs' family. GoGo explained Planet Travel Group did temporarily hold space but it was automatically cancelled because no deposit was made.

¶ 9        On December 31, 2007, Planet Travel Group sold all its assets to Planet Travel Holdings, Inc. (Planet Travel Holdings), for $1. The agreement for bulk sale contemplated the buyer (Fuener doing business as Planet Travel Holdings) would be liable for any claims related to Planet Travel Group (the agreement required Planet Travel Group to provide and continue to supplement a list of all present and future creditors). On February 8, 2008, Planet Travel Group was involuntarily dissolved.

¶ 10       Shortly after this date, Fuener, acting as a sole proprietor doing business as Planet Travel Holdings, forwarded a copy of a check made payable to plaintiffs in the amount of $5,619.32 to Chase claiming it had already reimbursed plaintiffs the amount charged to their credit card

and asking Chase to reverse the credit and recharge plaintiffs' account. Plaintiffs never received this check and on April 11, 2008, Fuener's bank confirmed this check had neither cleared nor been processed. Fuener later admitted this check was never sent to plaintiffs.

¶ 11 On April 17, 2008, Fuener sent plaintiffs a cashier's check in the amount of $5,619.32. "VISA Card Refund" was noted on the front of the check and the back of the check contained a restrictive endorsement indicating endorsement of the check by plaintiffs would be evidence all claims were paid in full. Plaintiffs' attorney returned this check to defendants' attorney, explaining plaintiffs could not accept the check because of the restrictive endorsement and suggesting defendant was attempting to use the check as a basis to reverse the VISA credit. At the same time, plaintiffs' attorney offered to settle the claim if defendants (1) allowed the $5,619.32 credit to plaintiffs' VISA to stand; (2) returned the cashier's check for $5,619.32 to plaintiffs; and (3) paid plaintiffs an additional $375. Fuener admitted he also sent a copy of this check to Chase in an attempt to have plaintiffs' credit card refund reversed. A June 2008 VISA arbitration committee decision found the credit to plaintiffs' credit card was warranted because the cardholder was unwilling to accept the check offered by defendant due to the restrictive endorsement.

¶ 12 Planet Travel Holdings was eventually incorporated in Nevada in March 2009 (Fuener is listed as president, secretary, treasurer, and director) and registered to do business in Illinois in April 2009. However, prior to its March 2009 incorporation, Fuener operated Planet Travel Holdings from the same address he had operated at since 1999. Fuener also (1) continued to use and maintain the same checking accounts of Planet Travel Group; (2) filed tax returns on behalf of Planet Travel Group and Planet Travel Holdings for 2007 and 2008; and (3) operated the travel agency generally known as Planet Travel without interruption.

¶ 13 In May 2008, plaintiffs filed their initial complaint. In October 2008, the case was transferred from small claims to the law division, presumably because the claim for attorney fees exceeded small claims limits. In December 2008, plaintiffs filed an amended complaint after which they tendered discovery and requests to admit to defendants. Defendants filed their responses late, on June 5, 2009, following the filing of plaintiffs' motion to deem facts admitted. Defendants failed to respond to a request for production of documents and failed to clear up deficiencies in their other discovery responses. Plaintiffs filed their first motion to compel in September 2009 and their second motion to compel in February 2010. Discovery continued through March 2011 with defendants requesting depositions as late as January 2011.

¶ 14 Plaintiffs set the case for trial in December 2010 but defendants continued the trial setting to conduct more discovery. Multiple motions to continue were filed by defendants in December 2010 and April 2011. On July 25, 2011, plaintiffs amended their complaint to add Planet Travel Holdings (the Nevada corporation) as a defendant. That same day, a bench trial was conducted at which time defendants admitted owing plaintiffs $5,994.32. The trial court allowed defendants' request to submit written closing arguments. On September 1, 2011, the court entered judgment against defendants, finding they had (1) violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 to 12 (West 2006)) and (2) breached their contract with plaintiffs. The court also ordered plaintiffs to schedule a hearing to determine the amount of their reasonable attorney fees.

¶ 15     On September 8, 2011, plaintiffs filed a notice of hearing on attorney fees and served notice on defendants' attorney, Jackson Donley. On September 21, 2011, Donley withdrew as defendants' counsel. On September 27, 2011, attorney Michael Costello entered his appearance by filing a motion for defendants. No one appeared for defendants at the October 17, 2011, hearing on attorney fees, and the trial court awarded plaintiffs $29,838.76 in attorney fees plus costs of $680.67. At a January 11, 2012, hearing on motions filed by defendants, the court granted defendants' motion to vacate attorney fees. Plaintiffs reset their motion for attorney fees for March 7, 2012, and sent notice to defendants. At the request of defendants, plaintiffs agreed to continue the hearing on attorney fees until May 2, 2012. In April 2012, defendants moved to continue the hearing on attorney fees. Plaintiffs objected and the court denied defendants' motion to continue the hearing.

¶ 16     During the May 2, 2012, hearing on attorney fees, the only evidence introduced by defendants relating to the reasonableness of the fees was through cross-examination of plaintiffs' attorney, Lisa A. Petrilli. Defendants offered no testimony to contradict plaintiffs' attorney's testimony. The trial court allowed defendants' request for time to file written arguments regarding the reasonableness of the attorney fees and object to specific line items. However, defendants failed to raise any specific objections in their written arguments.

¶ 17     On July 3, 2012, the trial court entered judgment awarding attorney fees to plaintiffs in the amount of $32,306.25 and costs of $680.67.

¶ 18     This appeal followed.

¶ 19                                II. ANALYSIS

¶ 20                     A. The Trial Court Did Not Abuse Its Discretion by
                               Awarding Attorney Fees to Plaintiffs

¶ 21     Defendants assert the trial court abused its discretion by awarding attorney fees to plaintiffs under either the (1) Consumer Fraud Act (815 ILCS 505/10a(c) (West 2006)) or (2) breach of contract claims. We disagree.

¶ 22                 1. *Attorney Fees Awarded Pursuant to the Consumer Fraud Act*

¶ 23     Defendants contend, if this court finds the award of attorney fees falls under the Consumer Fraud Act counts, the trial court abused its discretion in awarding plaintiffs $32,306.25 in attorney fees because the award is disproportionate to the recovery of $5,994.32. Defendants suggest plaintiffs were overzealous in the amount of work done to recover $5,994.32 and, thus, the attorney fees incurred by plaintiffs were not reasonable. Further, defendants assert because plaintiffs rejected defendants' compromise, *i.e.*, a cashier's check in the amount of $5,619.32 containing a restrictive endorsement stating, "endorsement is evidence of [*sic*] all claims are paid in full," they are not entitled to attorney fees under the Consumer Fraud Act.

¶ 24     Initially, we reject defendants' contention plaintiffs were not entitled to attorney fees because they refused to accept the $5,619.32 cashier's check with the restrictive endorsement as a "compromise." We note the amount of this check was not for the $5,994.32 defendants

-5-

owed plaintiffs but rather was for the amount of the VISA credit card payment that VISA refunded to plaintiffs. In fact, a note on the cashier's check states "VISA Card Refund." Further, defendants sent a copy of this check to the credit card processor in an attempt to have plaintiffs' credit card refund reversed. Our review of the record indicates defendants' purpose in offering the cashier's check was not an attempt to compromise or settle, but was an effort to regain the $5,619.32 from VISA and dispose of any future claims by plaintiffs.

¶ 25    Under the Consumer Fraud Act, reasonable attorney fees may be awarded to the prevailing party. 815 ILCS 505/10a(c) (West 2006); *Demitro v. General Motors Acceptance Corp.*, 388 Ill. App. 3d 15, 22, 902 N.E.2d 1163, 1170 (2009). In determining what is reasonable, a trial court should consider "(1) the skill and standing of the attorney; (2) the nature of the case; (3) the novelty or difficulty of the issues and work involved; (4) the importance of the matter; (5) the degree of responsibility required; (6) the usual and customary charges for comparable services; (7) the benefit to the client; and (8) whether there was a reasonable connection between the fees charged and the amount involved in the litigation." *Parker v. Nichting*, 2012 IL App (3d) 100206, ¶ 17, 966 N.E.2d 63; see also *Totz v. Continental Du Page Acura*, 236 Ill. App. 3d 891, 910, 602 N.E.2d 1374, 1386-87 (1992). A trial court is also permitted to use its own knowledge and experience based on its familiarity with the case to determine whether the number of hours expended by counsel on the case were reasonable. *Demitro*, 388 Ill. App. 3d at 24, 902 N.E.2d at 1171. Whether attorney fees were properly awarded is reviewed under an abuse of discretion standard. *Kleczek v. Jorgensen*, 328 Ill. App. 3d 1012, 1023, 767 N.E.2d 913, 921 (2002).

¶ 26    While defendants concede attorney fees are allowable under the Consumer Fraud Act, they assert it is unclear from the orders of the court whether defendants were found guilty under the Act. The record belies this contention. The trial court's order states "The Defendants engaged in a series of unfair, fraudulent and deceptive acts in the course of this consumer transaction which violated the Consumer Fraud and Deceptive Business Practices Act." The court continued "The plaintiffs are entitled to an award of their costs and reasonable attorneys' fees in both the contract and consumer fraud accounts." It is clear from the trial court's order defendants were found guilty of consumer fraud. Thus, the issue becomes whether the attorney fees awarded plaintiffs were reasonable.

¶ 27    In October 2011, plaintiffs' counsel submitted an affidavit of attorney fees and costs totaling $29,838.75 for services provided from April 2008 through September 2011. In May 2012, after the trial court vacated its original award of attorney fees and costs, the trial court heard evidence on plaintiffs' request for attorney fees. At the hearing for attorney fees, plaintiffs' counsel testified to the following on cross-examination when called as an adverse witness. The $29,838.75 indicated on her affidavit was only for services provided through September 21, 2011. The total bill actually was $53,000, but she reduced the fees to $29,000 after deducting for times when two attorneys appeared for plaintiffs and for time spent on motions for sanctions that were denied. In her opinion, the time and labor expended to obtain the $5,994.32 judgment was reasonable because plaintiffs' had offered to settle for $5,994.32 in April 2008, but Fuener refused the offer and, thus, plaintiffs were forced to litigate their claim to obtain the money defendant admitted owing plaintiffs at trial. Further, she had experience representing parties in consumer fraud cases.

-6-

¶ 28 On direct testimony, plaintiffs' counsel reiterated plaintiffs tried to resolve this matter in April 2008 but were unable to do so, and due to defendants' actions, plaintiffs were forced to proceed with litigation to recover the amount owed to them. She further stated her fees were reasonable based on the period of time this matter had been pending, the number of motions filed, hearings reset, and the amount of time actually spent working on the case as the result of defendants' actions.

¶ 29 Defendants failed to offer any testimony to contradict plaintiffs' attorney's testimony at the hearing. The trial court allowed defendants requested time to file written arguments related to the reasonableness of fees in order to challenge the fees and specific line items; however, defendants failed to raise any objections in their written arguments.

¶ 30 On June 1, 2012, plaintiffs filed an amended affidavit of attorney fees ($32,306.25) and costs ($680.67). On July 3, 2012, the trial court entered judgment awarding $32,306.25 in attorney fees and $680.67 in costs to plaintiffs. The court specifically found (1) "[t]he work completed by the Plaintiffs' attorney was not overzealous"; (2) "[t]he amount of attorneys' fees requested is reasonably connected to the amount the Plaintiffs recovered in judgment"; and (3) "[t]he Plaintiffs' request for $32,306.25 in attorneys' fees for over four years of litigation work is reasonable."

¶ 31 Our review of the record further indicates the trial judge had been overseeing this matter since the case was reassigned to him in November 2009. Thus, in addition to plaintiffs' attorney testifying regarding many of the factors a trial court should consider, the trial judge was permitted to use his own familiarity with the case to determine whether the hours expended by plaintiffs' counsel was reasonable.

¶ 32 The amount of attorney fees awarded in this case is supported by the record. Plaintiffs initially filed their complaint in May 2008 after defendant Fuener had multiple opportunities to refund the money owed to plaintiffs. Prior to filing their complaint, which was transferred from the small claims division in October 2008, plaintiffs offered to accept the $5,994.32 owed to them without fees so long as defendants paid by cashier's check and did not attempt to recharge plaintiffs' VISA. No record evidence suggests defendants ever responded to this offer. Further, defendants delayed this matter from proceeding to trial for nearly three years. Under these facts, the trial court did not abuse its discretion in awarding $32,306.25 in attorney fees to plaintiffs under the Consumer Fraud Act.

¶ 33 2. *Attorney Fees Under Breach of Contract Claims*

¶ 34 Because we find attorney fees were properly awarded under the Consumer Fraud Act, we need not address defendants' contention the contract between the parties does not allow for attorney fees.

¶ 35 B. Personal Liability of Defendant Fuener

¶ 36 Defendant Fuener next asserts the trial court erred in finding him personally liable for the judgment, attorney fees, and costs awarded plaintiffs. Specifically, Fuener asserts he cannot be personally liable to plaintiffs because the corporations are liable. We disagree.

¶ 37	Whether the trial court erred in awarding the judgment of attorney fees against Fuener individually is reviewed under the manifest weight of the evidence standard. *Eychaner v. Gross*, 202 Ill. 2d 228, 251, 779 N.E.2d 1115, 1130 (2002). " 'To reverse a finding of damages, a reviewing court must find that the trial judge ignored the evidence or that the measure of damages was erroneous as a matter of law.' " *Strong v. City of Peoria*, 401 Ill. App. 3d 1096, 1098, 930 N.E.2d 561, 564 (2010) (quoting *Carey v. American Family Brokerage, Inc.*, 391 Ill. App. 3d 273, 277, 909 N.E.2d 255, 259 (2009).

¶ 38	A successor corporation is generally not liable for the debts or liabilities of the transferor corporation. *Vernon v. Schuster*, 179 Ill. 2d 338, 344-45, 688 N.E.2d 1172, 1175 (1997). "The traditional rule of successor corporate nonliability 'developed as a response to the need to protect bonafide purchasers from unassumed liability' ***." *Id.* at 345, 688 N.E.2d at 1175 (quoting *Tucker v. Paxson Machine Co.*, 645 F.2d 620, 623 (8th Cir. 1981)). However, to protect the rights of corporate creditors following dissolution, four exceptions to this general rule of successor nonliability developed: "(1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Id.* at 345, 688 N.E.2d at 1175-76.

¶ 39	In this case, plaintiffs assert two of these exceptions to successor nonliability apply to Fuener. First, plaintiffs contend Fuener's sole proprietorship and later incorporation of Planet Travel Holdings is a mere continuation of the former corporate entity, Planet Travel Group. Second, plaintiffs assert the sale of assets from Planet Travel Group to Fuener, doing business as Planet Travel Holdings, was done for the purpose of escaping liability for the debt owed plaintiffs.

¶ 40	The trial court found Fuener personally liable based on its determination Fuener, doing business as Planet Travel Holdings, was a mere continuation of Planet Travel Group. The mere continuation exception to successor nonliability applies "when the purchasing corporation is merely a continuation or reincarnation of the selling corporation," or where the new "corporation maintains the same or similar management and ownership, but merely wears different clothes." (Internal quotation marks omitted.) *Vernon*, 179 Ill. 2d at 346, 688 N.E.2d at 1176. In determining whether a successor is merely a continuation of its predecessor, the majority of jurisdictions, including Illinois, require identity of ownership between the two businesses. *Id*. at 346-47, 688 N.E.2d at 1176.

¶ 41	Here, Planet Travel Group was incorporated in Illinois in September 1999, with Fuener as the majority shareholder, president, and agent. On December 31, 2007, shortly after this dispute arose, Planet Travel Group sold all its assets to Fuener, a sole proprietor doing business under the name Planet Travel Holdings, in an agreement for bulk sale for the total purchase price of $1. In February 2008, Planet Travel Group was involuntarily dissolved. In March 2009, Fuener incorporated Planet Travel Holdings in the State of Nevada, listing himself as president, secretary, treasurer, and director. In April 2009, Planet Travel Holdings registered to do business in Illinois as a foreign corporation. Between the sale of Planet Travel Group's assets to Fuener, doing business as Planet Travel Holdings, in 2007 and the incorporation of Planet Travel Holdings in Nevada in 2009, Fuener (1) operated the travel

-8-

agency from the same address he had operated at since 1999, (2) used and maintained the same checking accounts used by Planet Travel Group, (3) filed tax returns on behalf of Planet Travel Group and Planet Travel Holdings for 2007 and 2008, and (4) operated the travel agency generally known as Planet Travel without interruption. Based on these undisputed facts, it is clear all three businesses share a common identity of ownership, *i.e.*, Fuener.

¶ 42 We further reject Fuener's contention he cannot be personally liable because Planet Travel Holdings is simply a "reincorporation" of Planet Travel Group. As previously noted, Planet Travel Group dissolved in February 2008 and Planet Travel Holdings was not incorporated in Nevada until March 2009–more than one year later. Further, Planet Travel Holdings obtained authorization to do business in Illinois as a foreign corporation, rather than registering as a "d/b/a" of Planet Travel Group. Fuener cannot escape personal liability for Planet Travel Group's debts, which he assumed by continuing the business as a sole proprietor, because he formed a new corporation in Nevada more than one year after Planet Travel Group dissolved.

¶ 43 We also note much of the conduct giving rise to this litigation occurred after Planet Travel Group was dissolved and during the period Fuener was conducting business as a sole proprietor. Sometime after February 8, 2008, Fuener sent a copy of a cashier's check in the amount of $5,619.32, purportedly mailed to plaintiffs on February 8, to Chase in an attempt to have Chase reverse the credit it had given plaintiffs. Fuener later admitted he never sent this check to plaintiffs. On April 17, 2008, Fuener did send a cashier's check to plaintiffs in the amount of $5,619.32, but this check contained a restrictive endorsement. Plaintiffs, through their attorney, returned this check to Fuener's attorney, explaining they could not accept it because of the restrictive endorsement and offering to settle the claim for the amount actually owed. No record evidence suggests Fuener responded to plaintiffs' offer to settle. However, Fuener did admit he also sent a copy of this check to Chase in an attempt to have plaintiffs' credit card refund reversed.

¶ 44 In addition, as plaintiffs point out, it appears the sale of Planet Travel Group's assets for the nominal cost of $1 to Fuener, doing business as Planet Travel Holdings, was likely for the purpose of attempting to escape liability for the debt owed to plaintiffs. The sale occurred on December 31, 2007, just 11 days after plaintiffs wrote Planet Travel Group regarding the $1,000 refund check from Apple and asking it to add the refund check to the balance owed for a total of $12,238.64. According to Planet Travel Group's bank statements, it did not have enough assets in its account to refund plaintiffs the money it owed them.

¶ 45 For all these reasons, the trial court did not err in finding Fuener personally liable to plaintiffs.

¶ 46                                    C. Disclosure of Fee Agreement

¶ 47 Last, defendants assert the trial court erred in refusing disclosure of the fee agreement between plaintiffs and their counsel based on attorney-client privilege. Our review of the transcript of the rehearing for attorney fees reveals the "fee agreement" to which defendants refer is whether plaintiffs' counsel or her law firm actually intended to collect the attorney fees incurred during this litigation from plaintiffs due to an alleged close relationship

between plaintiffs and an attorney at the firm. Citing attorney-client privilege, plaintiffs' counsel refused to answer and the trial court agreed such information was protected by attorney-client privilege.

¶ 48 Generally, evidentiary rulings are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89, 792 N.E.2d 1163, 1188 (2001). However, whether attorney-client privilege exists is reviewed *de novo*. *In re Estate of Blickenstaff*, 2012 IL App (4th) 120480, ¶ 58, 980 N.E.2d 1285; see also *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54, 765 N.E.2d 1002, 1007 (2002) ("the applicability of a statutory evidentiary privilege, and any exceptions thereto, are matters of law subject to *de novo* review").

¶ 49 Because the real issue here is whether the attorney fees awarded by the trial court were reasonable, however, we need not address whether this alleged agreement is privileged. We have already determined the trial court did not abuse its discretion in awarding $32,306.25 in attorney fees based on plaintiffs' counsel's affidavit of fees and testimony during the hearing, as well as the court's own familiarity with the case, and defendants' failure to dispute the reasonableness of the fees. Whether counsel actually planned to collect attorney fees from plaintiffs for services she rendered is not a determining factor in whether the fees incurred are reasonable.

¶ 50                                    III. CONCLUSION

¶ 51        For the reasons stated, we affirm.

¶ 52        Affirmed.