**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190275

Order filed March 26, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| KEVIN KAMIN, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff-Appellant/Cross-Appellee, | ) | LaSalle County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-19-0275 |
| | ) | Circuit No. 11-L-99 |
| COUNTRY CASUALTY INSURANCE | ) | |
| COMPANY, | ) | The Honorable |
| | ) | Troy D. Holland, |
| Defendant-Appellee/Cross-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court.
Justices Holdridge and O'Brien concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Trial court did not err in dismissing insured's vexatious delay in payment claim against insurer where insured failed to allege facts supporting conclusory allegations; and (2) trial court did not err or abuse its discretion in denying insurer's motions for judgment *n.o.v.* or a new trial where evidence did not establish that insured knowingly made a false statement to insurer and insured presented sufficient evidence of the value of his personal property destroyed by fire.

¶ 2    Defendant Country Casualty Insurance Company insured plaintiff Kevin Kamin's real property, including a house and barn. After his barn was destroyed by fire, plaintiff filed a two-

count second amended complaint against defendant, alleging breach of contract and vexatious delay in payment. The trial court dismissed plaintiff's vexatious delay in payment claim, and plaintiff's breach of contract claim proceeded to trial. The jury returned a verdict in favor of plaintiff for $198,837.45. Defendant filed a motion for remittitur, judgment *n.o.v.* and/or a new trial. The trial court denied defendant's requests for judgment *n.o.v.* and a new trial but entered a partial remittitur, reducing the judgment by $28,850.70. Plaintiff appeals the trial court's dismissal of his vexatious delay in payment claim, and defendant appeals the trial court's denial of its motion for judgment *n.o.v.* or a new trial. We affirm.

¶ 3                                                        BACKGROUND

¶ 4        Plaintiff Kevin Kamin owns real property in Earlville, Illinois, consisting of a house and a barn. On April 22, 2010, plaintiff's barn burned in a fire, and the contents of the barn were destroyed. Plaintiff's property was insured by defendant Country Casualty Insurance Company.

¶ 5        Plaintiff's insurance contract with defendant provided coverage for "auxiliary private structures" located "on the 'residence premises' set apart from the dwelling by clear space" but excluded "structures used in whole or in part for any 'business'." The policy defined "[b]usiness" as "[a] trade, profession or occupation engaged in on a full-time, part-time or occasional basis." The policy placed a $2,500 limit on property "used or intended for use in a 'business.'" The policy provided coverage under "Dwelling" for "materials and supplies located on or next to the residence premises used to construct, alter or repair the dwelling on the residence premises." Finally, the policy provided that no coverage would be provided "when any 'insured', whether before or after a loss, has: 1. [i]ntentionally concealed or misrepresented any material fact or circumstance; 2. [e]ngaged in fraudulent conduct; or 3. [m]ade false statements, relating to this insurance." The

2

contract contained limits of $160,161.75 for personal property, and $21,350.70 for an "auxiliary private structure."

¶ 6 Immediately after the fire, plaintiff notified defendant. The next day, defendant sent an employee, Tom Woolley, to plaintiff's home. In conversations with Woolley, plaintiff stated he did not use his barn for his painting business. In May and June 2010, plaintiff received checks for $5,000 each from defendant as advances on his personal property claim. Plaintiff later received other checks from defendant but did not cash them.

¶ 7 On April 20, 2011, plaintiff filed a complaint against defendant, alleging breach of contract and vexatious delay in payment. Defendant filed a motion to dismiss, and plaintiff filed an amended complaint on February 8, 2012, again alleging breach of contract in count I and vexatious delay in payment in count II. The trial court entered an order dismissing plaintiff's complaint, finding count I was premature and count II failed to state a cause of action.

¶ 8 On August 28, 2012, plaintiff filed his second amended complaint. Again, plaintiff alleged breach of contract in count I, and vexatious delay in payment in count II. Defendant filed a motion to dismiss. The trial court denied defendant's motion to dismiss with respect to count I but granted it with respect to count II. The court ruled that count II did "not state a cause of action" because section 154.6 of the Illinois Insurance Code (215 ILCS 5/154.6 (West 2018)) "provides no private cause of action or remedy." The court further found that "the allegations in said count are conclusions and not allegations of fact necessary to state a cause of action."

¶ 9 Plaintiff's breach of contract claim proceeded to a jury trial. At trial, plaintiff testified that he went into business for himself as a painter in 2005. He stored his painting materials in his barn and used approximately one-eighth of the barn for that purpose. He used the rest of the barn to store personal property. He testified that he had $10,000 worth of business equipment in the barn

3

at the time of the fire. He testified that he did not use the barn for business purposes, explaining that he "go[es] to people's houses and paint[s]."

¶ 10　　　　Plaintiff testified that he provided defendant with two lists of items that were in the barn and destroyed by the fire. According to those lists, over 1100 items with an "actual cash value" of $187,064.21 were destroyed. Plaintiff testified that "actual cash value" is an item's retail price minus depreciation, and depreciation is "based on years of useful life." Plaintiff said he determined depreciation based on information defendant gave him. Plaintiff also testified that he had building materials, such as windows, doors, light fixtures, flooring and other items, stored in the barn that he intended to use to remodel his home. He testified that the actual cash value of those materials was $23,755.

¶ 11　　　　Plaintiff agreed that during defendant's investigation of his insurance claim, he had been current on his mortgage in the five years prior to the fire. He admitted that he "was wrong" when he said that because his lender had put his house in foreclosure in 2007, and he and his wife entered into a forbearance agreement to catch up on their payments. Plaintiff also admitted that he "was wrong" when he told Woolley he did not use his barn for business. He did not know that he was "using" his barn for business by storing items in it. Plaintiff believed that being "[w]rong and – and a liar are two different things."

¶ 12　　　　Woolley, the claim field representative handler for plaintiff's claim, testified that he had no reason to believe that plaintiff made any intentional misrepresentations to him or concealed any information from him. Will Anderson, a claims supervisor for defendant and Woolley's supervisor, testified that he knew shortly after the fire that plaintiff kept some items related to his business in the barn. He testified that keeping "a small amount of [business] items" in the barn would be "a

4

minor policy violation" but using one-eighth of the barn to store business equipment is "a very large violation of the policy."

¶ 13 Robert Nodine, who works in defendant's special investigations unit, testified that he determined that plaintiff intentionally concealed that he was using his barn for his business and that many of the items plaintiff listed as personal property were used in his business based on statements made by plaintiff's ex-wife while she and plaintiff were in the midst of a divorce. Nodine also believed plaintiff misrepresented the type of work he performed when he denied that he remodeled properties.

¶ 14 Christine Woodward, plaintiff's ex-wife, testified that she married plaintiff in 1995. She moved out of the Earlville home in March of 2009. While she was living with plaintiff, he stored equipment for his business in the barn. She wrote off all the electricity and fuel for the barn as business expenses on plaintiff's tax returns until 2009, when she and plaintiff separated.

¶ 15 The parties presented the jury with a number of special interrogatories. In answering those interrogatories, the jury found that plaintiff proved defendant breached its contract by failing to pay plaintiff the "actual cash value of the damage to his property" and that plaintiff sustained damages resulting from that breach. The jury determined that defendant did not prove that plaintiff or Woodward "intentionally concealed or misrepresented material facts, engaged in fraudulent conduct or made false statements" with respect to the following: (1) "their claim," (2) "the ownership, existence, use, location or value of the items of personal property in the claim," (3) "[plaintiff's] employment", (4) "that certain items of personal property claimed damaged or destroyed were not used by [plaintiff] in his business," or (5) "claiming that the barn was not used by [plaintiff] in his business." The jury found the "actual cash value" of the damage to plaintiff's barn was $21,350.70, the "actual cash value" of the damage to plaintiff's personal property was

5

$150,131.75, and the "actual cash value" of the materials and supplies used to construct, alter or repair plaintiff's dwelling was $27,355.00. The trial court entered judgment in favor of plaintiff for $198,837.45.

¶ 16 Defendant filed a posttrial motion, seeking remittitur, judgment *n.o.v.*, or a new trial. The trial court denied defendant's request for judgment *n.o.v.* and a new trial but partially granted defendant's request for remittitur. The trial court entered a partial remittitur of $21,350.70 for the barn because plaintiff admitted that he used it for his business, thereby excluding it from coverage under the policy. The court also reduced the personal property award by $7,500 because plaintiff claimed $10,000 from losses to business equipment, but the policy allowed him to recover only $2,500 for "business" property. The final award entered in favor of plaintiff and against defendant was $169,986.75.

¶ 17                                                    ANALYSIS

¶ 18                                                        I.

¶ 19 Plaintiff appeals the trial court's dismissal of his vexatious delay in payment claim, arguing that he sufficiently alleged a claim under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2018)) by alleging defendant committed several improper acts listed in section 154.6 of the Insurance Code (215 ILCS 5/154.6 (West 2018)).

¶ 20 "Section 154.6 [of the Insurance Code] lists acts committed by an insurance company that constitute improper claims practices." *Area Erectors, Inc. v. Travelers Property Casualty Co. of America*, 2012 IL App (1st) 111764, ¶ 30. Section 154.6 is regulatory in nature and "does not give rise to a private remedy or cause of action by a policyholder against an insurer." *Id.* However, a private cause of action does exist under section 155 of the Illinois Insurance Code. *Id.* ¶ 31.

¶ 21 Section 155 of the Illinois Insurance Code states:

"In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious or unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees ***." 215 ILCS 5/155 (West 2018).

"The purpose of section 155 is to provide a remedy to insureds who encounter unnecessary difficulties resulting from an insurance company's vexatious and unreasonable refusal to honor its contract with the insured." *Rogers Cartage Co. v. Travelers Indemnity Co.*, 2018 IL App (5th) 160098, ¶ 94. "Section 155 was intended to make lawsuits by policyholders economically feasible and to punish insurers." *Id.* ¶ 95.

¶ 22    Allegations that an insurer misled the insured about the contents of his policy, inadequately investigated his claim, refused to negotiate in good faith, refused to participate in the appraisal process in good faith and delayed payment after the appraisal process was complete are sufficient to state a claim under Section 155. See *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 681-82 (2000); see also *Markel American Insurance Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011) (allegations that insurer knowingly misrepresented relevant facts related to coverage, failed to conduct a full, fair and prompt investigation of the claim and denied the claim based in part on incomplete information and speculation were adequate to state a claim under section 155). Some of the acts described in section 154.6 "are illustrative of conduct by an insurer that may give rise to a remedy for vexatious and unreasonable conduct under section 155." *Zagorski v. Allstate Insurance Co.*, 2016 IL App (5th) 140056, ¶ 26.

¶ 23 "If the insured merely states that the insurer committed vexatious and unreasonable delay without some modicum of factual support, the insured will not have stated a cause of action under Section 155." *American Alliance Insurance Co. v. 1212 Restaurant Group, L.L.C.*, 342 Ill. App. 3d 500, 511 (2003); *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 681 (2000); *Bedoya v. Illinois Founders Insurance Co.*, 293 Ill. App. 3d 668, 679 (1997). Dismissal is proper when a plaintiff makes conclusory allegations without factual support; specific facts must be pleaded upon which the conclusions rest. *Universal Outdoor, Inc. v. Village of Elk Grove*, 194 Ill. App. 3d 303, 305 (1990).

¶ 24 Here, in his second amended complaint, plaintiff alleged that defendant engaged in "improper claims practice" which was evidence of its "unreasonable and vexatious failure to pay the claim." Specifically, plaintiff alleged that defendant stopped providing him assistance in updating and unilaterally altered and changed his personal property lists, unreasonably refused to pay his claim without reasonable grounds, and delayed paying his claim. Plaintiff further alleged that defendant committed several acts listed in section 154.6 of the Insurance Code, including (a) knowingly misrepresenting relevant facts or policy provisions relating to the coverage available, (b) compelling plaintiff to institute suit to recover amounts due under the contract and offering substantially less than the amounts due, (c) refusing to pay plaintiff's claim without conducting a reasonable investigation, and (d) delaying the investigation of his claim.

¶ 25 While the acts alleged by plaintiff "may constitute improper claims practices" (*Area Erectors, Inc.*, 2012 IL App (1st) 111764, ¶ 30), the trial court properly dismissed plaintiff's cause of action because plaintiff pled conclusory allegations without factual support. Without facts supporting them, the conclusory allegations were insufficient. See *Universal Outdoor, Inc.*, 194 Ill. App. 3d at 305. Because plaintiff alleged only conclusory allegations supporting his claim for

8

vexatious delay in payment, the trial court properly dismissed the claim. See *American Alliance Insurance Co.*, 342 Ill. App. 3d at 511; *McGee*, 315 Ill. App. 3d at 681; *Bedoya*, 293 Ill. App. 3d at 679.

¶ 26                                                    II.

¶ 27            Defendant argues that the trial court should have granted its motion for a judgment *n.o.v.* or a new trial because plaintiff committed insurance fraud by stating (1) he did not use his barn for business, (2) his mortgage had been current since 2005, and (3) his business did not include remodeling. Alternatively, defendant argues that plaintiff's personal property claim should be reduced because plaintiff did not present sufficient evidence to establish the value of his personal property destroyed in the fire.

¶ 28            In considering motions for judgment *n.o.v.* and a new trial, "the trial court cannot reweigh the evidence and set aside a verdict just because the jury could have drawn different inferences or conclusions or because the court feels that other results are more reasonable." *Ford v. Grizzle*, 398 Ill. App. 3d 639, 650 (2010). "Likewise, we cannot usurp the function of the jury and substitute our own judgment for that of the jury." *Id.*

¶ 29            A judgment *n.o.v.* is properly entered when all the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict based on the evidence could ever stand. *Id.* A trial court may not enter a judgment *n.o.v.* if there is any evidence demonstrating a factual dispute or where the assessment of the witnesses' credibility or the determination regarding conflicting evidence is decisive to the outcome of the trial. *Id.* In ruling on a motion for judgment *n.o.v.*, the trial court may not weigh the evidence or assess the credibility of witnesses. *Id.*

9

¶ 30        In ruling on a motion for a new trial, the trial court will weigh the evidence and grant a new trial if the jury's verdict is against the manifest weight of the evidence. *Id*. at 651. We will not reverse a trial court's ruling on a motion for a new trial unless the trial court clearly abused its discretion because the trial judge had the benefit of viewing the witnesses firsthand at trial. *Id.*

¶ 31        "An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Insurance Co. of the Midwest,* 214 Ill. 2d 11, 17 (2005). "Under policy provisions voiding coverage if the insured willfully conceals any material fact, or in the case of fraud or false swearing, courts will deny recovery to an insured who has made deliberate material misstatements in the sworn proof of loss." *Marvel Engineering Co. v. Commercial Union Insurance Co.,* 118 Ill. App. 3d 844, 848 (1983).

¶ 32        Ordinarily, fraud and false swearing is a question of fact for the jury. *Folk v. National Ben Franklin Insurance Co.*, 45 Ill. App. 3d 595, 597 (1976). However, it can become a question of law if the insured's representations cannot in any way be viewed as innocent. *Id*. Similarly, the materiality of a false statement provided by an insured is a question of fact; however, the materiality of a false statement may become a question of law if the misrepresentation is not innocent. *A & A, Inc. v. Great Central Insurance Co.*, 259 Ill. App. 3d 73, 82 (1994).

¶ 33        It is a plaintiff's burden to prove damages to a reasonable degree of certainty. *Carey v. American Family Brokerage, Inc.*, 391 Ill. App. 3d 273, 282 (2009). The proper calculation of the actual cash value of personal property is "replacement cost less depreciation." *Id.* at 281-82. Where the plaintiff fails to provide an adequate basis upon which the trial court could calculate damages with reasonable certainty but the record establishes that the plaintiff suffered damage, the proper

10

remedy is not reversal of the damage award outright but a new trial on the issue of damages only. See *id*. at 283.

¶ 34    An award of damages is left to the sound judgment of the jury. *Jones v. Chicago Osteopathic Hospital*, 316 Ill. App. 3d 1121, 1138 (2000). "A jury award should be reversed on appeal only if it is evident that the amount 'resulted from passion or prejudice, and that the amount falls outside the limits of fair and reasonable compensation and shocks the judicial conscience." *Id*. (quoting *Lundquist v. Nickels*, 238 Ill. App. 3d 410, 435 (1992)). If a jury's award falls within the flexible range of conclusions reasonably supported by the evidence, it must stand. *Id*. A remittitur should be granted only when the jury's award is not reasonably supported by the facts. *Lawler v. MacDuff*, 335 Ill. App. 3d 144, 155 (2002).

¶ 35    Here, plaintiff admitted that he was "wrong" when he told defendant that he did not use his barn for business and that he had not missed a mortgage payment on his home in the last five years. Nonetheless, he explained that there was a difference between being "wrong" and lying. The jury agreed, finding, in answering the special interrogatories, that plaintiff did not intentionally make material misrepresentations to defendant. That finding was not unreasonable. Therefore, the trial court did not err in denying defendant's motion for judgment *n.o.v.* or a new trial based on defendant's claim that plaintiff provided one or more false statements that voided the insurance policy.

¶ 36    With respect to damages, plaintiff testified regarding the "actual cash value" of the items that were destroyed in his barn. He also explained that "actual cash value" is the difference between retail price and depreciation, which is consistent with Illinois law. See *Carey*, 391 Ill. App. 3d at 281-82. While defendant questioned plaintiff regarding his valuations, defendant never provided evidence showing that plaintiff's valuations were incorrect. There was sufficient evidence to

11

support the jury's award of damages. The trial court properly denied defendant's request to further reduce plaintiff's damages.

¶ 37                                    CONCLUSION

¶ 38        The judgment of the circuit court of LaSalle County is affirmed.

¶ 39        Affirmed.