NOTICE
Decision filed 07/24/20. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2020 IL App (5th) 180577

NO. 5-18-0577

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| JARRET SPROULL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-L-1341 |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) ) | Honorable William A. Mudge, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Moore and Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Jarret Sproull, filed a putative class action complaint against defendant, State Farm Fire and Casualty Company (State Farm), and sought damages for breach of contract and declaratory relief. Plaintiff alleged that State Farm improperly depreciated labor costs when it calculated the "actual cash value" of covered losses and that State Farm concealed this practice from plaintiff and similarly situated policyholders. State Farm moved to dismiss the complaint for failure to state a claim and argued that its method of calculating actual cash value fully complied with the terms of its policy and Illinois law. The trial court denied State Farm's motion to dismiss, finding that the term "actual cash value" was ambiguous and that it should be strictly construed against State Farm. The trial court subsequently granted State Farm's motion to certify the

1

following question for interlocutory review pursuant to Illinois Supreme Court Rule 308(a) (eff. July 1, 2017):

> "Where Illinois' insurance regulations provide that the 'actual cash value' or 'ACV' of an insured, damaged structure is determined as 'replacement cost of property at time of loss less depreciation, if any,' and the policy does not itself define actual cash value, may the insurer depreciate all components of replacement cost (including labor) in calculating ACV?"

¶ 2    This court initially denied State Farm's application for leave to appeal under Rule 308(a). *Sproull v. State Farm Fire & Casualty Co.*, No. 5-18-0577 (Jan. 10, 2019). The Illinois Supreme Court then denied State Farm's petition for leave to appeal but issued a supervisory order directing this court to vacate its January 10, 2019, order and allow State Farm's application for leave to appeal. *Sproull v. State Farm Fire & Casualty Co.*, No. 124484 (Ill. Mar. 20, 2019) (supervisory order). Accordingly, we vacated our prior order and granted State Farm's Rule 308(a) application. *Sproull v. State Farm Fire & Casualty Co.*, No. 5-18-0577 (Apr. 26, 2019).

¶ 3                                 I. BACKGROUND

¶ 4    The basic facts are not disputed. On December 28, 2015, plaintiff's home sustained wind damage during a storm. Plaintiff submitted a timely property damage claim under a homeowners policy issued to him by State Farm.

¶ 5    The State Farm policy covered replacement costs for structural damage and contained a two-step process for settling a claim for a covered loss.

> "Coverage A—Dwelling
>
>        1. A1—Replacement Cost Loss Settlement—Similar Construction

2

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged parts of the property covered ***, subject to the following:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

(3)	to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; ***."

¶ 6	The State Farm policy does not define the term "actual cash value" or explain how actual cash value is calculated. It does not inform the policyholder that actual cash value is the replacement cost of the property at the time of loss, less depreciation, if any. The policy does not define "depreciation," and it does not indicate that labor costs are subject to depreciation.

¶ 7    On January 23, 2016, a State Farm adjuster inspected plaintiff's home and determined that plaintiff sustained a covered loss. The adjuster used an electronic software program called "Xactimate" to prepare the repair estimate. The adjuster identified 26 line-item repairs and input that data into the program. The Xactimate program provided an estimated cost for each component of the repair items. The Xactimate software contained an option that allowed the adjuster to mark boxes of his own choosing in order to depreciate one or more of the individual components of the repair cost, including materials, non-materials (labor), removal, overhead and profit, and sales tax. In the absence of active intervention by the adjuster, the software program automatically depreciated for materials only. In this case, the adjuster ticked the box to depreciate the labor component on some repair items.

¶ 8    Using the Xactimate program, the adjuster generated an estimate report. A copy of the estimate report was subsequently provided to plaintiff. According to the estimate, depreciation was applied to both material costs and labor costs on 7 of the 26 repair items. The estimate indicated that repair and replacement cost totaled $1711.54, and that depreciation totaled $394.36. The "actual cash value" of plaintiff's loss was calculated by subtracting $394.36 in depreciation from $1711.54 in estimated repair costs, which equaled $1317.18. After accounting for the $1000 deductible, plaintiff received a payment of $317.18.

¶ 9    An "Explanation of Building Replacement Cost Benefits" (Explanation of Benefits) accompanied the estimate provided to plaintiff. The Explanation of Benefits provided, in pertinent part:

"Your insurance policy provides replacement cost coverage for some or all of the loss or damage to your dwelling or structures. Replacement cost coverage pays the actual

4

and necessary cost of repair or replacement, without a deduction for depreciation, subject to your policy's limit of liability. To receive replacement costs benefits you must:

1. Complete the actual repair or replacement of the damaged part of the property within two years of the date of loss; and

2. Notify us within 30 days after the work has been completed.

3. Confirm completion of repair or replacement, by submitting invoices, receipts or other documentation to your agent or claim office.

Until these requirements have been satisfied, our payment(s) to you will be for the actual cash value of the damaged part of the property, *which may include a deduction for depreciation*.

\* \* \*

The estimate to repair or replace your damaged property is $1,711.54. The enclosed payment to you of $317.18 is for the actual cash value of the damaged property at the time of loss, less any deductible that may apply. We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost. *Our estimate details the depreciation applied to your loss*. Based on our estimate, the additional amount available to you for the replacement cost benefits (recoverable depreciation) is $394.36." (Emphases added.)

¶ 10    On September 23, 2016, plaintiff filed a putative class action complaint. Plaintiff alleged that State Farm breached its contractual obligations to plaintiff and similarly situated policyholders when it improperly calculated the actual cash value of covered losses by depreciating labor costs in addition to the cost of materials. Plaintiff also alleged that State Farm's practice of depreciating intangible items, such as labor, was deceptive. Plaintiff sought an order certifying the class, a

5

judgment declaring that State Farm's insurance contract did not allow a deduction for depreciation of labor, and an award of damages that would make all class members whole. The itemized estimate and the Explanation of Benefits were attached to the complaint.

¶ 11 State Farm filed a combined motion, under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2014)), to stay the proceedings, or alternatively, to dismiss plaintiff's complaint. In its motion to stay the proceedings under section 2-619(a)(3) (735 ILCS 5/2-619(a)(3) (West 2014)), State Farm alleged that another class action case involving duplicate claims (*Jenkins v. State Farm Fire & Casualty Co.*, No. 15-CH-8242 (Cir. Ct. Cook County, May 21, 2015)), was pending in the Illinois Appellate Court First District, having been dismissed by the circuit court of Cook County.[1]

¶ 12 State Farm also moved to dismiss plaintiff's complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)). State Farm argued that plaintiff could not state a cause of action for breach of contract or declaratory relief because its method for calculating actual cash value fully complied with the terms of its policy and applicable Illinois insurance regulations. State Farm further argued that the term "actual cash value" was not subject to more than one reasonable interpretation and was unambiguous. Additionally, State Farm claimed that a

---

[1]In *Jenkins v. State Farm Fire & Casualty Co.*, plaintiff Jenkins filed a purported class action complaint for breach of contract and declaratory judgment in the circuit court of Cook County. Jenkins alleged State Farm had improperly depreciated labor costs when it calculated the actual cash value of a covered structural loss. State Farm moved to dismiss Jenkins' complaint, alleging that it was time-barred by the policy's one-year limitation and that it failed to state a cause of action. The circuit court denied State Farm's motion to dismiss for failure to state a claim, reasoning that labor does not lose value over time or due to wear and tear. The court dismissed the action based upon plaintiff's failure to timely file it within the one-year period allowed under the policy. *Jenkins v. State Farm Fire & Casualty Co.*, No. 15-CH-8242 (Cir. Ct. Cook County, May 21, 2015). Jenkins appealed. State Farm filed a cross-appeal, challenging the circuit court's determination that labor should not be depreciated in calculating actual cash value under its policy. Our colleagues in the First District affirmed the circuit court's decision to dismiss the action based on the one-year limitation in the policy and dismissed State Farm's cross-appeal as moot. *Jenkins v. State Farm Fire & Casualty Co.*, 2017 IL App (1st) 160612-U.

dismissal of the contract claim was warranted because plaintiff did not allege any facts to demonstrate that he had been damaged by the alleged breach.

¶ 13    In a supporting memorandum,[2] State Farm asserted that section 919.80(d)(8)(A) of Title 50 of the Illinois Administrative Code (50 Ill. Adm. Code 919.80(d)(8)(A) (2002)) provided that the method for calculating "actual cash value," under insurance policies similar to plaintiff's policy, was "replacement cost of property at time of loss less depreciation, if any." State Farm argued that no provision within section 919.80(d)(8)(A) limited depreciation to the materials' component of replacement cost and that administrative regulations, when unambiguous, should be applied as written.

¶ 14    In its memorandum, State Farm further indicated that the Illinois Department of Insurance permitted several insurance companies to sell homeowners policies that (i) provided for the initial payment based on the actual cash value of a loss, (ii) identified the various components of replacement costs (including both material and nonmaterial components), and (iii) specified that when calculating actual cash value all components of replacement cost were depreciable. Copies of homeowners policies from Shelter Insurance Company and Farmers Insurance Company were attached as supporting exhibits.

¶ 15    The Shelter Insurance policy defined "actual cash value" as "total restoration cost less depreciation." Within the definition, Shelter noted that where a state's laws "limit the factors that may be considered in determining actual cash value, only those factors allowed by law will be considered." The Shelter policy provided that depreciation was based on "the decrease in value of

_____

[2]In its supporting memorandum, State Farm noted that plaintiff did not attach the insurance policy to his complaint and that the failure to attach a contract in a breach of contract claim was grounds for dismissal under section 2-606 of the Code of Civil Procedure (735 ILCS 5/2-606 (West 2014)). Rather than raise this point as a basis for dismissal, State Farm elected to attach a certified copy of the policy to its pleadings so that the policy was before the court. State Farm then proceeded with its other section 2-615 arguments "in the interest of judicial economy."

7

the property since it was new" and that "the condition, age, extent of use, and obsolescence of the property, and the property as a whole" would be considered in determining depreciation. The policy further stated that depreciation applied to "the labor and applicable sales tax necessary to complete covered repairs and replacements." The Farmers Insurance policy defined "actual cash value" as "the reasonable replacement cost at the time of loss less deduction for depreciation." It also informed policyholders: "We may depreciate all replacement costs, including but not limited to the costs of materials and labor."

¶ 16    In its memorandum, State Farm acknowledged that it had recently amended its Illinois homeowners policy, adding "Form FE-3650 Actual Cash Value Endorsement." The endorsement, containing a copyright date of 2015, was attached to the memorandum as an exhibit.[3] In its endorsement, State Farm defined the term "actual cash value" and expressly stated that labor costs were subject to depreciation. State Farm noted that the endorsement did not take effect until at

---

[3] "Endorsement FE-3650 Actual Cash Value Endorsement

The following is added to any provision which uses the term 'actual cash value':

Actual cash value means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:

1. materials, including any tax;
2. labor, including any tax; and
3. overhead and profit;
are subject to depreciation.

The depreciation deduction may include such considerations as:
1. age
2. condition;
3. reduction in useful life;
4. obsolescence; and
5. any pre-loss damage including wear, tear, or deterioration;
of the damaged part of the property. All other policy provisions apply.

FE-3650        © Copyright, State Farm Mutual Automobile Insurance Company, 2015"

8

least February 1, 2016, "long after" plaintiff's policy was issued.[4] State Farm argued that the endorsement could not be construed as an admission that the language in plaintiff's policy was ambiguous or different in substance or operation.

¶ 17    In response, plaintiff argued that a stay of the proceedings was unnecessary because the only issue certain to be addressed in the *Jenkins* appeal was whether Jenkins' individual lawsuit had been timely filed. Plaintiff further argued that the term "actual cash value" was not defined in the policy and was ambiguous because it was subject to more than one reasonable interpretation. Plaintiff noted that other insurers, such as Shelter Insurance and Farmers Insurance, had issued policies that expressly stated that labor costs were subject to depreciation, while State Farm declined to define "actual cash value" or to inform policyholders of its intent to apply depreciation to labor costs.

¶ 18    On March 8, 2017, State Farm's combined motion was heard and taken under advisement. On May 16, 2017, the trial court granted State Farm's request to stay the proceedings pending a resolution of the *Jenkins* appeal. On June 20, 2017, our colleagues in the First District affirmed the dismissal of the *Jenkins* action based upon Jenkins's failure to file his suit within the one-year limitation in the policy. *Jenkins v. State Farm Fire & Casualty Co.*, 2017 IL App (1st) 160612-U. Following a status hearing on August 9, 2017, the trial court lifted the stay order and permitted the parties to file supplemental arguments. Both parties indicated that the depreciation of labor costs was a novel issue in Illinois, and they submitted case law from other jurisdictions in support of their respective arguments.

---

[4]The record contains a renewal certificate indicating that plaintiff's policy was renewed and in effect from November 25, 2015, to November 25, 2016.

¶ 19    On February 26, 2018, the trial court denied State Farm's section 2-615 motion to dismiss. In its order, the trial court agreed there were no Illinois cases addressing the issue. The court provided a thoughtful analysis, reviewing the case law from other jurisdictions and recognizing the split of authority on the issue. The court found that the term "actual cash value" was not defined in the State Farm policy and was susceptible to more than one reasonable interpretation. The court further found that State Farm drafted the policy and could have stated that labor costs were subject to depreciation. The court concluded that the term "actual cash value" was ambiguous and that the ambiguity should be construed in favor of the insured and against the insurer.

¶ 20    On April 18, 2018, State Farm filed a motion to certify a question of law pursuant to Rule 308(a). State Farm argued that the labor depreciation question raised a new and undecided question under Illinois law and that a resolution of the question would materially advance the ultimate termination of the litigation. In response, plaintiff asked the trial court to certify the class before certifying a question of law for interlocutory review. Plaintiff argued that certification of a class would remove the risk that State Farm would later argue against class certification because a common question had already been resolved. Plaintiff also proposed modifications to the question proposed by State Farm.

¶ 21    On November 14, 2018, the trial court denied plaintiff's motion to determine the issue of class certification prior to certifying a question of law and certified the question of law proposed by State Farm. State Farm's application for leave to appeal under Rule 308(a) was ultimately granted. Upon motions filed pursuant to Illinois Supreme Court Rule 345 (eff. Sept. 20, 2010), the American Property Casualty Insurance Association and the National Association of Mutual

Insurance Companies[5] were granted leave to jointly file an *amicus curiae* brief in support of State Farm's position, and United Policyholders[6] was granted leave to file an *amicus curiae* brief in support of plaintiff's position.

¶ 22                                     II. ANALYSIS

¶ 23    Illinois Supreme Court Rule 308(a) (eff. July 1, 2017) gives the appellate court discretion to grant an appeal from an interlocutory order not otherwise appealable if the trial court finds that the order "involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Generally, the scope of review in a Rule 308 appeal is limited to the question of law identified by the trial court. *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21. A reviewing court will decline to answer a certified question where the answer is dependent upon the underlying facts of a case or where the question calls for an answer that is advisory or provisional. *Rozsavolgyi*, 2017 IL 121048, ¶ 21. A question certified under Rule 308 presents a question of law that is reviewed *de novo*. *Rozsavolgyi*, 2017 IL 121048, ¶ 21.

¶ 24    In this case, the trial court certified the following question:

"Where Illinois' insurance regulations provide that the 'actual cash value' or 'ACV' of an insured, damaged structure is determined as 'replacement cost of property at time of loss less depreciation, if any,' and the policy does not itself define actual cash value, may the insurer depreciate all components of replacement cost (including labor) in calculating ACV?"

---

[5]American Property Casualty Insurance Association and National Association of Mutual Insurance Companies identify themselves as national trade organizations representing property and casualty insurers writing business in Illinois, nationwide, and globally.

[6]United Policyholders identifies itself as a not-for-profit public interest consumer advocacy organization.

¶ 25    The certified question involves the interpretation of a personal homeowners insurance policy, drafted and issued by State Farm. When interpreting the language in an insurance policy, the general principles of contract construction apply. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). A court's primary objective in construing the language in an insurance policy is to determine and give effect to the intent of the parties as expressed by the agreement. *Hobbs*, 214 Ill. 2d at 17; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). If the language in the policy is clear and unambiguous, the provision will be applied as written, unless it contravenes public policy. *Outboard Marine*, 154 Ill. 2d at 108. Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation. *Hobbs*, 214 Ill. 2d at 17. Where competing reasonable interpretations of a policy exist, courts will construe the policy in favor of the insured and against the insurer who drafted the policy. *Outboard Marine*, 154 Ill. 2d at 108-09.

¶ 26    A policy term is not rendered ambiguous simply because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning. *Hobbs*, 214 Ill. 2d at 17. Undefined terms will be given their plain, ordinary, and popular meaning; that is, they will be construed with reference to "the average, ordinary, normal *** reasonable [person]." (Internal quotation marks omitted.) *Outboard Marine*, 154 Ill. 2d at 115. A court will not strain to find an ambiguity where none exists; likewise, a court will not adopt an interpretation that rests on fine or tenuous distinctions that the average person, for whom the policy is written, cannot be expected to understand. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010); *Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America*, 411 Ill. 325, 334 (1952) (construction to be given insurance contract should be a natural and reasonable one).

12

¶ 27    We begin our analysis from a historical perspective, recognizing that property insurance was borne of fire insurance policies, and that property insurance policies, like those fire policies, were contracts of indemnity. Couch on Insurance 3d § 148.1 (June 2020). Furthermore, the fundamental principle of a contract of indemnity is to place the insured in as good a position, as reasonably practicable, as he would have been had the loss not occurred. See generally *Outboard Marine*, 154 Ill. 2d at 103; *General Casualty Co. v. Tracer Industries*, *Inc.*, 285 Ill. App. 3d 418, 423 (1996).

¶ 28    The homeowners policy at issue provided for replacement costs for structural damage and contained a two-step process for settling a covered loss. In step one of the process, which applied prior to the completion of the actual repair or replacement of the damaged property, State Farm was to pay the actual cash value, at the time of the loss, of the damaged part of the property. Thus, State Farm was obligated to indemnify plaintiff, thereby placing plaintiff in the position he enjoyed prior to the loss. In step two, which applied when the repairs were completed, State Farm was to make additional payments for the actual and necessary repairs to the damaged property.

¶ 29    The parties' disagreement here centers on whether labor costs may be depreciated when calculating the actual cash value of damaged property under the homeowners insurance policy at issue. State Farm claims that its method for calculating actual cash value fully complies with section 919.80(d)(8)(A) of Title 50 of the Code (50 Ill. Adm. Code 919.80(d)(8)(A) (2002)). State Farm asserts that section 919.80(d)(8)(A) directs insurance companies to determine "actual cash value" as "replacement cost of property at time of loss less depreciation, if any," and that no provision within section 919.80(d)(8)(A) limits depreciation to materials only. 50 Ill. Adm. Code 919.80(d)(8)(A) (2002). In response, plaintiff asserts that under section 919.80(d)(7)(C) (50 Ill. Adm. Code 919.80(d)(7)(C) (2002)), repair estimates must be of a sufficient amount to allow

13

repairs to be made "in a workmanlike manner." Plaintiff reasons that if actual cash value is calculated as replacement costs, less depreciation for materials and labor, the insured's payment would not be sufficient to allow repairs to be done in a "workmanlike manner." As evidenced by their arguments, both parties have failed to consider the regulation in its entirety and to give the words used their plain, ordinary, and commonly understood meanings. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008).

¶ 30    Section 919.80 of Title 50 of the Code (50 Ill. Adm. Code 919.80 (2002)) regulates insurance claim practices involving private passenger automobiles. It also regulates claim practices of property and casualty companies. 50 Ill. Adm. Code 919.80 (2002).

¶ 31    Section 919.80(d)(7) sets forth required claims practices by property and casualty companies for fire and extended coverage losses. 50 Ill. Adm. Code 919.80(d)(7) (2002). Subsection A of section 919.80(d)(7) addresses unreasonable delay in payment of claims made on fire and extended coverage insurance policies. 50 Ill. Adm. Code 919.80(d)(7)(A) (2002). Subsection B requires insurers to provide reasonable written explanations for delays in the resolution of those claims. 50 Ill. Adm. Code 919.80(d)(7)(B) (2002). Subsection C of section 919.80(d)(7) addresses partial losses and provides in part:

> "If partial losses are settled on the basis of a written estimate prepared by or for the company, the company shall supply upon request of the insured, a copy of the estimate upon which the settlement is based. The estimate prepared by or for the company shall be reasonable, in accordance with applicable policy provisions, and of an amount which will allow for repairs to be made in a workmanlike manner." 50 Ill. Adm. Code 919.80(d)(7)(C) (2002).

¶ 32    Section 919.80(d)(8) sets forth the formula for calculating actual cash value losses and provides in pertinent part:

> "A) When the insurance policy provides for the adjustment and settlement of losses on an actual cash value basis on residential fire and extended coverage as defined in Section 143.13 of the Code [215 ILCS 5/143.13],[7] the company shall determine actual cash value *** as follows: replacement cost of property at time of loss less depreciation, if any. Upon the insured's request, the company shall provide a copy of the claim file worksheet(s) detailing any and all deductions for depreciation, including, but not necessarily limited to, the age, condition, and expected life of the property." 50 Ill. Adm. Code 919.80(d)(8)(A) (2002).

¶ 33    It is no coincidence that the provisions for calculating actual cash value follow the provisions covering claims practices for property losses due to fire. As mentioned above, property insurance coverage evolved from insurance policies that indemnified policyholders for losses caused by fire. A century ago, in *Smith v. Allemannia Fire Insurance Co. of Pittsburg*, 219 Ill. App. 506, 512-13 (1920), the Illinois Appellate Court construed an indemnity clause in a fire policy and announced that it would follow the rule that stated that "actual cash value" means "reproduction value less depreciation for age and not market value." The *Smith* rule, defining actual cash value as reproduction value less depreciation for age, has been applied by Illinois courts when calculating damages under other types of actual cash value policies. See, *e.g.*, *C.L. Maddox, Inc. v. Royal Insurance Co. of America*, 208 Ill. App. 3d 1042 (1991); *Carey v. American Family Brokerage, Inc.*, 391 Ill. App. 3d 273, 281-82 (2009).

---

[7]Under section 143.13, a policy of fire and extended coverage means "a policy delivered or issued for delivery in this State, that includes but is not limited to, the perils of fire and extended coverage, and covers real property used principally for residential purposes." 215 ILCS 5/143.13(b) (West 2014).

¶ 34    Decades after the *Smith* rule was announced, this court was asked to consider the definition

of actual cash value where the loss was occasioned by an explosion and fire. *C.L. Maddox*, 208 Ill.

App. 3d 1042. In *C.L. Maddox*, the parties did not dispute that the insurance policy at issue was an

"actual cash value" policy. The trial court defined actual cash value as reproduction costs minus

depreciation and excluded evidence of the building's fair market value. *C.L. Maddox*, 208 Ill. App.

3d at 1054. On appeal, the defendant claimed that fair market value was relevant to the

determination of actual cash value. Relying on *Smith*, this court held that "actual cash value means

reproduction costs less depreciation for age and not market value."[8] *C.L. Maddox*, 208 Ill. App.

3d at 1055.

¶ 35    In *Carey*, 391 Ill. App. 3d 273, the owners of a building filed a breach of contract action

against their insurer after their building was damaged by a fire. During trial, plaintiff's expert

estimated that the replacement costs for the building totaled $398,725. The expert acknowledged

that she did not employ an actual cash valuation, so she did not consider or calculate depreciation.

Following a bench trial, the court awarded damages based on replacement costs rather than the

actual cash value called for in the policy. The appellate court found that the proper measure of

damages was based on actual cash value. *Carey*, 391 Ill. App. 3d at 280. The court set aside the

award and remanded the case for a new trial on damages. Relying on the rule announced in *Smith*,

the *Carey* court held that the proper calculation of actual cash value under both Illinois law and

the insurance policy at issue was "replacement cost less depreciation." *Carey*, 391 Ill. App. 3d at

281. In discussing damages, the court pointed out that depreciation in an insurance context, rather

than an accounting context, meant "the decrease in the actual value of property based on its

---

[8]At the time *C.L. Maddox* was decided, Illinois Department of Insurance Rule 9.19(15) defined
"actual cash value" as reproduction costs minus depreciation. *C.L. Maddox*, 208 Ill. App. 3d at 1054-55.

physical condition, age, use, and other factors that affect the remaining usefulness of the property."
*Carey*, 391 Ill. App. 3d at 281 (citing Black's Law Dictionary 473 (8th ed. 2004)). Another dictionary reference defines "depreciation" as "a reduction in value of an asset with the passage of time, due in particular to wear and tear." Concise Oxford American Dictionary 243 (2006). Considering these references, the plain, common, and ordinary meaning of depreciation is a reduction in value of a property because of aging and wear and tear to the physical structure of that property.

¶ 36    The State Farm policy at issue here does not define "actual cash value" or "depreciation." The policy does not inform the insured that "actual cash value" will be calculated as replacement cost less depreciation for the costs of labor and materials. State Farm has not demonstrated that it incorporated section 919.80(d)(8)(A) into its policy. State Farm's reliance on section 919.80(d)(8)(A), even if it had been incorporated into the policy, would not have resolved the issue in favor of State Farm. Indeed, the regulation relied on by State Farm states that actual cash value is calculated as "replacement cost of *property* at time of loss less depreciation, if any." (Emphasis added.) This provision specifically pertains to replacement cost of the damaged "property," less depreciation of that "property." According to the dictionary definitions, property refers to something tangible, something that is owned, or possessed.[9] Again, the insurance regulations governing required claims practices are to be construed together, and the terms used therein, unless otherwise defined, are to be given their plain and ordinary meaning. *Madigan*, 231 Ill. 2d at 380. Thus, it is clear, based upon the plain language of the State Farm policy at issue and the language

_____

[9]Indeed, depending on which dictionary is referred to, there are multiple definitions of the word "property." All of the varying definitions, however, refer to something tangible, owned, or possessed. See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/property (last visited July 20, 2020) [https://perma.cc/P7HD-9CD4]; Concise Oxford American Dictionary 710 (2006); Black's Law Dictionary 1095 (5th ed. 1979).

17

in the Code that "actual cash value" refers to real property—an asset that can lose value over time due to wear and deterioration, resulting from use or the elements, and does not refer to services, such as labor. We note that this definition of "property" is further supported by the language in State Farm's own policy. The subject policy defines "property damage" as "physical damage to or destruction of *tangible* property, including loss of use" of that property. (Emphasis added.) Thus, an ordinary layperson may reasonably interpret "depreciation, if any," to describe the depreciation of physical, tangible materials, particularly where the language follows the word "property."

¶ 37    As previously noted, the certified question before us has not been previously considered with regard to this State Farm policy under Illinois law. There is no dispute, however, that under Illinois law, the term "actual cash value" begins with a determination of the "cost of replacement" of the damaged property. *General Casualty Co.*, 285 Ill. App. 3d at 422. In the fire-related claims cases decided by Illinois courts, the cost of replacement has always allowed for a deduction for depreciation of the property based on age. *C.L. Maddox*, 208 Ill. App. 3d 1042; *Smith*, 219 Ill. App. at 513.

¶ 38    The parties and the *amici* have cited cases from other jurisdictions that reveal that courts are split on whether depreciation may be applied to labor costs when determining actual cash value under state law. Compare, *e.g.*, *Redcorn v. State Farm Fire & Casualty Co.*, 2002 OK 15, 55 P.3d 1017 (under the broad evidence rule, depreciation of labor and materials was appropriate in determining the ACV of a covered loss where ACV was not defined in insurance policy), with *Adams v. Cameron Mutual Insurance Co.*, 2013 Ark. 475, 430 S.W.3d 675 (cost of labor may not be depreciated when determining ACV under indemnity policy that does not define ACV), *superseded by statute*, Ark. Code Ann. § 23-88-106(a)(2) (West 2017); see also *Wilcox v. State*

18

*Farm Fire & Casualty Co.*, 874 N.W.2d 780, 785 (Minn. 2016) (labor costs may be depreciable depending on facts and circumstances of the particular case).

¶ 39    In answering the certified question before us, we remain mindful that we must consider whether the average, ordinary, reasonable person, for whom the policy was written, would have understood that the "actual cash value" of a covered loss meant replacement costs of property less depreciation for materials *and labor. Outboard Marine*, 154 Ill. 2d at 115. We think not. We conclude that an average, ordinary homeowner who purchased the State Farm policy at issue would have reasonably expected that depreciation would apply only to property, *i.e.*, physical structures and tangible materials, as those lose value with age, use, and wear and tear. We further conclude that it is not reasonable to believe that an average homeowner would consider labor to be a tangible asset included within the definition of depreciation. State Farm sought to apply a technical definition of depreciation that is not evident in the language of the policy or in the regulation upon which it relies. Courts will not adopt an interpretation which rests on fine distinctions that the average person, for whom the policy is written, cannot be expected to understand. *Outboard Marine*, 154 Ill. 2d at 115; *Canadian Radium & Uranium Corp.*, 411 Ill. at 334. Our resolution is in keeping with the primary purpose of an indemnity clause in an insurance contract.

¶ 40                                III. CONCLUSION

¶ 41    The original certified question in this case referred to all components of replacement cost, including labor. The parties' arguments in the trial court and this court addressed only whether the labor component could be depreciated. Thus, we have reformulated the common question of law, pursuant to Rule 308 and have limited our response to the sole issue of whether the cost of labor can be depreciated when determining the actual cash value of a loss as defined under "Coverage A" of the State Farm policy at issue. *Crawford County Oil, LLC v. Weger*, 2014 IL App (5th)

19

130382, ¶ 11. Accordingly, we conclude that the answer to the certified question, as reformulated, is "No." Where Illinois's insurance regulations provide that the "actual cash value" of an insured, damaged structure is determined as "replacement cost of property at time of loss less depreciation, if any," and the policy does not itself define actual cash value, only the property structure and materials are subject to a reasonable deduction for depreciation, and depreciation may not be applied to the intangible labor component.

¶ 42    Finally, we have considered several motions to cite additional authorities from jurisdictions outside Illinois, which were filed by the parties after oral arguments were heard and the case was under advisement. Initially, we ordered each motion to be taken with the case. Because the language in an insurance policy is interpreted under the laws of Illinois, decisions from other jurisdictions generally provide limited guidance. Nevertheless, we have hereby granted each motion to cite additional authority, and we reviewed those decisions as we considered the issues before us.

¶ 43    Certified question answered; cause remanded.

2020 IL App (5th) 180577

NO. 5-18-0577
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

_____

| | | |
|---|---|---|
| JARRET SPROULL, Individually and on Behalf of All Others Similarly Situated, | ) | Appeal from the Circuit Court of Madison County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16-L-1341 |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | Honorable William A. Mudge, |
| | ) | |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**        July 24, 2020

_____

**Justices:**        Honorable Judy L. Cates, J.

Honorable James R. Moore, J., and
Honorable John B. Barberis, J.
Concur

_____

**Attorneys for Appellant**        Craig R. Unrath, Heyl, Royster, Voelker & Allen, PC, 300 Hamilton Boulevard, Box 6199, Peoria, IL 61601-6199; Patrick Cloud, Heyl, Royster, Voelker & Allen, P.C., 105 W. Vandalia Street, Suite 100, Edwardsville, IL 62025; Joseph A. Cancila, Jr., Heidi Dalenberg, Jacob L. Kahn, Riley Safer Holmes & Cancila LLP, Three First National Plaza, 70 W. Madison Street, Suite 2900, Chicago, IL 60602

_____

**Attorneys for Appellee**        Christopher W. Byron, Christopher J. Petri, Byron, Carlson, Petri & Kalb, LLC, 411 St. Louis Street, Edwardsville, IL 62025; Joe D. Jacobson, Allen P. Press, Jacobson, Press & Fields, P.C., 168 N. Meramec Avenue, Suite 150, St. Louis, MO 63105; David C. Linder, T. Joseph Snodgrass, Larson King, LLP, 30 E. Seventh Street, Suite 2800, St. Paul, MN 55101; David T. Butsch, Christopher E. Roberts, Butsch Roberts & Associates, LLC, 231 S. Bemiston Avenue, Suite 260, Clayton, MO 63105

_____

*Amicus Curiae*        Michael R. Enright, Robinson & Cole, LLP, 280 Trumbell Street, Hartford, CT 06103-3597 (for American Property Casualty Insurance Association and National Association of Mutual Insurance Companies)

_____

*Amicus Curiae*        Edward Eshoo, Jr., Merlin Law Group, 181 W. Madison, Suite 3475, Chicago, IL 60602; Amy Bach, Executive Director, United Policyholders, 384 Bush St., 8th Floor, San Francisco, CA 94104 (for United Policyholders)

_____